UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DR. JACK W. STAMPS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | CIVIL ACTION NO. _____ |
| v. § | | |
| | § | |
| UNIVERSITY OF TEXAS AT AUSTIN, | § | |
| | § | |
| Defendant. | § | JURY DEMANDED |

**ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff, Dr. Jack W. Stamps (hereinafter, "Plaintiff" or "Dr. Stamps"), files this Complaint and Jury Demand against the University of Texas at Austin ("UT"), alleging willful violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* as amended by the Civil Rights Act of 1991 ("Title VII"), Title IX Education Amendments of 1972, 20 U.S.C. §1681 *et seq.* (Title IX) and the Family and Medical Leave Act of 1993, 28 U.S.C. §1131 and 29 U.S.C. §2601 *et seq.* ("FMLA"). For causes of action, Plaintiff would show the Court as follows:

**I.**

**PARTIES**

1.   Plaintiff is an individual who resides in Bexar County, Texas, and was at all relevant times employed by UT.

2.   Defendant UT is a state university located in the Western District of Texas. Defendant may be served by serving its President, Dr. Jay Hartzell.

---

**ORIGINAL COMPLAINT AND JURY DEMAND - Page 1**

II.

**JURISDICTION AND VENUE**

3.  The Court has subject matter jurisdiction because this action arises under the federal laws specified above and thus arises out of questions of federal constitutional law under the 14th Amendment as well as 42 U.S.C. § 2000e *et seq.* and 20 U.S.C. §§ 1681 *et seq.*

4.  The Court has personal jurisdiction over the parties because the parties reside in Texas and the Western Division of Texas.

5.  Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391 because the parties are residents of this District and Division and the causes of action alleged herein occured in this District.

II.

**FACTS**

6.  Dr. Stamps is a distinguished professor, practitioner and author in the area of music composition, with an emphasis in music technology. In addition to positions held at UT, Dr. Stamps' successful career includes position held at Seton Hall University, South Orange, NJ, and Trinity University, San Antonio, TX.  He has developed and taught courses in all areas of music composition, music technology, commercial music, popular music, multimedia, and music culture and music theory.  He was particularly successful at UT in creating a large flagship course which drew nearly 1,000 students per term, thus contributing immeasurably to the formation of the new Department of Arts and Entertainment Technology ("DAET") within the College of Fine Arts ("COFA") at UT.

7.  Plaintiff began his tenure with UT in the Fall of 2017 at COFA as a Lecturer and became an Assistant Professor of Practice in the Spring of 2018. He held this position until he was informed

in May of 2019 that his contract of employment was not being renewed.

8. During his tenure at COFA, Plaintiff was witness to inappropriate conduct on the part of Dr. Bruce Pennycook ("Pennycook"), Arts and Entertainment Technologies (DAET) chair. This conduct included Pennycook making inappropriate comments regarding female students and staff members. These comments included sexual remarks about physical features of female students and staff and comments about sexual activities about females including questions directed to Plaintiff about his own sexual relationship with his significant other, also a DAET faulty member subordinate to Pennycook. The comments happened on a regular basis and Plaintiff did not keep an exact detail of each date and time.

9. Pennycook was Plaintiff's supervisor and as such, Plaintiff on each occasion spoke directly to Pennycook expressing his opposition to the comments and stating that they were inappropriate. Plaintiff made clear that Pennycook should cease and desist such comments. Plaintiff made comments to Pennycook including "You can't say that kind of thing," "That's not cool," and "You have to stop making such comments" among others. Nonetheless, Pennycook's behavior continued. Indeed, Pennycook developed a hostile attitude towards Plaintiff following the reports and opposition.

10. On March 12, 2019, Plaintiff participated in a meeting with Pennycook and Dr. Douglas Dempster, Dean of COFA, regarding a promotion for Plaintiff, to Associate Professor of Practice. During the meeting, notwithstanding the promotion, Plaintiff was told that although he was receiving a promotion, he would not receive a raise and that one of his most successful classes, the class that enrolled nearly 900 students per term, was being removed from Plaintiff's schedule. Prior to the meeting, Plaintiff became increasingly concerned about the toxic environment that Pennycook's behavior toward female staff and students was causing. Plaintiff was also concerned

that Pennycook may have maligned Plaintiff's performance and attitude and that Plaintiff' expression of opposition to Pennycook's actions may have been conveyed to Dempster leading up to the promotion meeting. This concern was only exacerbated by the actions of Dempster, in tandem with Pennycook, during the Plaintiff's promotion meeting. That being the case, upon the conclusion of the meeting, Plaintiff requested to speak with Dempster privately regarding Pennycook. Rather than permit Plaintiff to speak with him privately, thus giving Plaintiff the opportunity to express his concerns, Dempster cut Plaintiff off and told Plaintiff that he would never have a conversation with Plaintiff without the presence of Pennycook, thus denying Plaintiff the opportunity to report the actions of Pennycook which were violations of not only Title IX but also Title VII.

11.     On April 8, 2019, Plaintiff, feeling the need to further address the situation, complained directly to a member of COFA administration, Associate Dean of Undergraduate Studies, Andrew Dell'Antonio. Plaintiff was told by Dell'Antonio that Plaintiff needed to file a Title IX complaint with the Division of Diversity and Community Engagement, Office for Inclusion and Equity ("OIE") or else Dell'Antontio would have to. Plaintiff filed the complaint on the same day, April 8, 2019, in which he reported and opposed the sexual discrimination and harassment on the part of Pennycook directed against female faculty members and students.

12.     Pennycook and Dempster were notified of the OIE's initiation of their investigation of Dr. Stamps' complaints no later than May 16, 2019. Less than two weeks later, on May 29, 2019, in a meeting with Assistant Dean Doreen Lorenzo, without the presence of a UT Human Resources representative, Ms. Lorenzo told Plaintiff that his contract with UT was not going to be renewed and terminated Dr. Stamps in contravention of UT's policy and procedure and without any explanation except to say that "AET is moving in a new direction." The termination letter given to

Dr. Stamps did not indicate his faculty rights or procedures for how to contest the termination. UT has since given varying versions for the decision to terminate Dr. Stamps, each of which is untrue and constitutes pretext for the underlying retaliation for having made his protected reports of harassment and discrimination, as is his legal right to do.

13. Following Dr. Stamps' notice of non-renewal, he filed a grievance with the UT Grievance Committee. In his grievance, he alleged that UT retaliated against him for his complaint against Pennycook for creating a sexually hostile environment and engaging in conduct that constituted violations of Title IX and Title VII. On June 4, 2020, the University Grievance Committee assembled a Grievance Panel to hear the Plaintiff's case of retaliation. The Grievance Panel, made up of independent professors from various schools across the UT campus, issued a finding that Dr. Stamps' claims of retaliation were substantiated. The Grievance Panel's opinion specifically referenced the fact that although the COFA administration was specifically told not to take retaliatory action against Dr. Stamps following his complaints to the OIE, the administration did just that, without any consultation with Human Resources.

14. Notwithstanding the findings of the UT Grievance Panel, that Plaintiff's claim of retaliation was substantiated, Plaintiff later learned, through an Open Records Request, that the UT Grievance Panel had in fact recommended to President Hartzell the reinstatement of Plaintiff's contract. Nonetheless, the University, by and through its President, Jay Hartzell, rejected the findings of the UT Grievance Panel and upheld COFA's decision to non-renew Plaintiff's contract thereby terminating him.

15. Following his termination, Dr. Stamps filed a second complaint with the OIE for retaliatory termination.

16. After his termination and the filing of his retaliation complaint, Dr. Stamps was subjected

to other forms of harassment, which consisted of a hostile work environment, including disparate treatment when compared with his fellow professors, violations of his academic freedoms through intimidation, removal from teaching assignments following his requested FMLA Leave and a refusal to retain him in his teaching role.

17. Based on Plaintiff's complaints about and opposition to Pennycook's behavior, the OIE began a formal investigation on May 6, 2019, and found SUFFICIENT EVIDENCE to find Pennycook in violation of the University's HOP 3-3031. The allegations were analyzed under the University's Prohibition of Sex Discrimination, Sexual Harassment, Sexual Assault, Sexual Misconduct, Interpersonal Violation, and Stalking Policy (HOP 3-3031). The OIE found that Pennycook violated the University's provisions pertaining to sexual misconduct. Subsequently, the OIE reversed itself on the findings, without allowing Plaintiff to corroborate, refute, or explain any of the cited reasons for the reversal (as had been the practice regarding new evidence or facts during the investigations), while simultaneously admitting that it [OIE] did not have any specific details about the cited reasons for the reversal. Plaintiff then rebutted the OIE's reversal directly to then-Provost Maurie McInnis. Once again, the University's administration, by way of Provost Maurie McInnis, adopted the OIE's reversal, thus overturning the findings of the OIE that Pennycook had violated the University's Prohibition of Sex Discrimination, Sexual Harassment, Sexual Assault, Sexual Misconduct, Interpersonal Violation and Stalking Policy.

18. Following the Defendant's actions in terminating Plaintiff's employment by non-renewing his contract and creating a hostile environment, on September 11, 2019, Plaintiff notified Dempster of the enormous level of stress, anger and anxiety that the bullying and retaliation was causing him. Rather than address the underlying causes of the stress and anxiety, Dempster suggested that Plaintiff take FMLA. Stamps agreed to apply for FMLA since Dempster didn't express any desire

to alleviate the underlying causes. Shortly thereafter, Plaintiff was notified that a list of scheduled classes had been sent out and all of Plaintiff's courses for Spring were cancelled, with no explanation.

19. On December 12, 2019 Plaintiff met with UT officials to discuss returning to work.

20. Following this meeting, Plaintiff was contacted by several students who expressed concern about why Plaintiff's Spring classes were being cancelled. Students told Plaintiff that they felt that they were being "steered away" from Plaintiff's classes.

21. Plaintiff never got to return to teach the classes he was scheduled to teach during the Spring semester and has since not been returned to his teaching position.

## III.

## FIRST CAUSE OF ACTION

### Title VII Retaliation

22. Plaintiff realleges and incorporates all of the allegations contained in the paragraphs of this Complaint set forth above.

23. Plaintiff has exhausted all of the federal administrative remedies in this cause by filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff filed a Charge of Discrimination within 300 days of the dates of the acts complained of and timely filed this suit within 90 days of receipt of the EEOC's Notice of Right to Sue.

24. Plaintiff's complaints of sex discrimination and sexual harassment to Dr. Bruce Pennycook and the OIE constitute protected activity under Title VII. Plaintiff's report of retaliation for having reported illegal activity constitutes protected activity under Title VII.

25. As a result of Plaintiff's protected activity, his contract of employment was non- renewed and he was thereby terminated from UT.

26.     As a result of Plaintiff's protected activity, he was subjected to a hostile environment and further retaliation as described above.

27.     As a result of Plaintiff's protected activity, UT cancelled classes he was scheduled to teach and removed him from teaching positions in the Spring of 2020.

28.     As a result of Plaintiff's protected activity, UT put forth unfounded claims about misconduct and incompetence on the part of Plaintiff in an effort to justify their illegal actions against him.

29.     The acts described above constitute illegal retaliation in violation of Plaintiff's legally protected rights.

30.     Plaintiff invokes the continuing violation doctrine based on the long standing and continuous acts of UT in retaliating against him after his reports during his employment.

31.     As a result of Defendant's actions, Plaintiff has suffered economic and emotional harm for which he seeks compensation as well as any and all legal and equitable remedies available to him under the provisions of Title VII.

## IV.

## SECOND CAUSE OF ACTION

### Title IX

32.     Plaintiff realleges and incorporates all the allegations contained in the paragraphs of this Complaint set forth above.

33.     Plaintiff's complaints of sex discrimination and sexual harassment to Dr. Bruce Pennycook and the OIE constitute protected activity under Title IX. Plaintiff's report of retaliation for having reported illegal activity constitutes protected activity under Title IX.

34.     As a result of Plaintiff's protected activity, his contract of employment was non-renewed

and he was thereby terminated from UT.

35. As a result of Plaintiff's protected activity, he was subjected to a hostile environment and further retaliation as described above.

36. As a result of Plaintiff's protected activity, UT cancelled classes he was scheduled to teach and removed him from teaching positions in the Spring of 2020.

37. As a result of Plaintiff's protected activity, UT put forth unfounded claims about misconduct and incompetence on the part of Plaintiff in an effort to justify their illegal actions against him.

38. The acts described above constitute illegal retaliation in violation of Plaintiff's legally protected rights.

39. As a result of Defendant's actions, Plaintiff has suffered damages for which he seeks compensation as well as any and all legal and equitable remedies available to him under the provisions of Title IX.

V.

### THIRD CAUSE OF ACTION

### FMLA

40. Plaintiff realleges and incorporates all the allegations contained in the paragraphs of this Complaint set forth above.

41. The acts of Defendant in refusing to permit Plaintiff to return to his teaching assignments following his FMLA leave constitutes retaliation for having taken his legally protected leave under the Act.

42. The actions of Defendant is refusing to permit Plaintiff to return to teach in the Spring of 2020 constitutes retaliation in violation of the FMLA.

43. The actions of Defendant in refusing to permit Plaintiff to return to teach in the Spring of 2020 caused economic damages in the form of lost compensation in violation of the FMLA.

## VI.

## ECONOMIC DAMAGES

As a result of Defendant's unlawful conduct, Plaintiff has suffered economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future.

## VII.

## COMPENSATORY AND PUNITIVE DAMAGES

Defendant intentionally engaged in unlawful employment practices described above. Plaintiff additionally brings suit for compensatory damages, including emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, injury to credit standing, and punitive damages.

## VIII.

## ATTORNEYS' FEES AND EXPERT FEES

If Plaintiff prevails in this matter, he seeks recovery of reasonable attorney's fees and expert fees as permitted by law.

## IX.

## JURY DEMAND

Plaintiff demands a trial by jury of all the issues and facts in this case.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

1. The Court assumes jurisdiction of this cause;

2. The Court enter an order providing injunctive relief;

3. The Court award Plaintiff economic damages as specified above;

4. The Court award Plaintiff compensatory damages as specified above;

5. The Court award Plaintiff liquidated damages;

6. The Court award Plaintiff reinstatement or, in the alternative, front pay;

7. The Court award Plaintiff's reasonable attorneys' and expert fees and costs;

8. The Court award Plaintiff pre- and post-judgment interest at the highest rates allowed.

Plaintiff further prays for any such other relief as the Court may find proper, whether at law or in equity.

Respectfully Submitted,

**THORPE & HATCHER**
2549 Greenville Ave., Suite 200
Dallas, Texas 75206
214/969-5500
*thwlaw@airmail.net*

By:   */s/ Steven B. Thorpe*
     Steven B. Thorpe
     State Bar No. 19990500
     Carla S. Hatcher
     State Bar No. 09219500

**ATTORNEYS FOR PLAINTIFF**