UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DR. JACK W. STAMPS, § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. 1:20-cv-01204-LY |
| v. § | |
| § | |
| UNIVERSITY OF TEXAS AT AUSTIN, § | |
| Jay Hartzell, in his individual and § | |
| official capacity, Doreen Lorenzo, Bruce § | |
| Pennycook and Doug Dempster, § | |
| in their individual capacities, and Michael § | |
| Baker, in his official capacity, § | |
| § | |
| Defendants. § | JURY DEMANDED |

**PLAINTIFF'S FOURTH AMENDED COMPLAINT**

  **COMES NOW** Plaintiff Dr. Jack Stamps ("Plaintiff"), filing this his Fourth Amended Original Complaint against Defendant University of Texas at Austin (UT), Defendant Jay Hartzell, ("Hartzell"), President of UT, in his individual and official capacities, Defendant Doreen Lorenzo, Defendant Doug Dempster and Defendant Bruce Pennycook, in their individual capacities and Defendant Michael Baker, in his official capacity.

**PARTIES**

  1. Plaintiff is an individual who resides in Bexar County, Texas, and was at all relevant times employed by UT.

  2. Defendant UT is a state university located in the Western District of Texas. Defendant UT has been served by and through the Texas Attorney General's Office.

  3. Defendant Hartzell was at all times relevant to this action the President of the University of Texas. Defendant has been served in his individual capacity by and through the Texas

---
PLAINTIFF'S FOURTH AMENDED ORIGINAL COMPLAINT AND JURY DEMAND - Page 1

Attorney General's Office. This amended complaint adds claims against Hartzell in his official capacity for injuntive relief only.

4. Defendant Lorenzo was at all times relevant to this action the Assistant Dean of COFA and has claimed to have made the final decision not to renew Plaintiff's contract. Defendant Lorenzo has been served by and through the Texas Attorney General's Office.

5. Defendants Pennycook and Dempster were at all times employees of UT and, upon information and belief, involved in the decision to nonrenew Plaintiff's contract with UT.

6. Defendant Baker, as an employee of UT, in his official capacity, violated Plaintiff's rights under the Family and Medical Act.

## II.

## JURISDICTION AND VENUE

7. Plaintiff's claims are founded upon violation of the Constitution and laws of the United States. Therefore this court has original jurisdiction pursuant to 28 U.S.C. §1331. The Court has subject matter jurisdiction because this action arises under federal laws specified above and also out of questions of federal constitutional law under the 14th Amendment to the Constitution pursuant to §1983 as well as 42 U.S.C. § 2000e *et seq.* and the Family and Medical Leave Act.

8. The Court has personal jurisdiction over the parties because the parties reside in Texas and the Western Division of Texas.

9. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391 because the parties were, at all relevant times, residents of this District and Division and the causes of action alleged herein occurred in this District.

## III.

## FACTS

10. Dr. Jack Stamps is a distinguished professor, practitioner and author in the area of musical arts.

11. In addition to positions held at UT, Dr. Stamps' career includes positions held at Seton Hall University, South Orange, New Jersey, and Trinity University, San Antonio, Texas.

12. Dr. Stamps developed and taught courses in music composition, music technology, commercial music, popular music, multimedia, music culture and music theory.

13. Dr. Stamps was particularly successful in creating a large flagship course which drew nearly 900 students per term, thus contributing immeasurably to the curricular and economic foundation for the new Department for Arts and Entertainment Technology ("DAET").

14. Plaintiff has developed and taught courses in all areas of music composition, multimedia, and music culture, as well as music theory. He was particularly successful at UT in creating courses which drew nearly 1,000 students, thus advancing and improving the DAET.

15. Plaintiff began his tenure with UT in the Fall of 2017 at the College of Fine Arts as a Lecturer and was promoted to Assistant Professor of Practice in March of 2019.

16. Professor Kate Canales wrote on behalf of the Department Budget Council, regarding Dr. Stamps' application for promotion:

> "Professor Stamps' teaching and curricular design have been invaluable to building the program" and that "his involvement is critical to its continued growth."

17. Regarding Dr. Stamps application for promotion, Dempster writes on November 19, 2018:

> "Professor Stamps' service to his fledgling department has been enormous. He's served as area head for Music and Sound, attended countless curriculum design meetings and served on several faculty search committees. He advised on the design of new classrooms and labs,

on software and hardware requirements, on software and hardware requirements for new courses and classrooms, and on the design and technical specifications for The Foundry, a maker space in the School of Design and Creative Technologies.  He advised on admissions standards for the new program and screened student applications.  He's helped develop the governance structure of the new School of Design and Creative Technologies, which includes both the Department of Arts and Entertainment Technology and the Department of Design."

18. Plaintiff was to hold his position pursuant to contract through August 31, 2020 but he was informed in May of 2019 that his contract of employment was not being renewed.

19. At no time during his employment with UT did Stamps receive an unfavorable review, or any disciplinary action.

20. During his tenure at COFA Plaintiff was witness to sexually inappropriate conduct on the part of Defendant Pennycook.  This conduct included Pennycook making sexually charged comments regarding female students, staff and faculty.  These comments included sexual remarks about physical features of female students and staff and comments about the sexual activities of Plaintiff as well as questions directed to Plaintiff about his own relationship with his significant other, also a DAET faculty member and subordinate to Pennycook.  The comments made to Plaintiff and the specific questions addressed to Plaintiff about his own sex life were deeply offensive to Plaintiff, and coming from his direct supervisor, created a hostile work environment for Plaintiff.  Plaintiff, on a number of occasions, made clear that he found Pennycook's comments offensive.  The comments happened on a regular basis and Plaintiff did not keep detailed records of the date and time of each occurrence.  Plaintiff made clear that Pennycook should cease and desist such comments. Plaintiff told Pennycook "You can't say that kind of thing," "That's not cool," and "You have to stop making such comments." Nonetheless, Pennycook's behavior continued.  Indeed, Pennycook developed a hostile attitude towards Plaintiff following the his comments to him directed toward discouraging Pennycook's inappropriate language. reports.  During this time, Plaintiff only made

these comments directly to Pennycook and did not file formal complaints to Pennycook's supervisor or UT administration. He was merely telling Pennycook that his comments were inappropriate.

21. On March 12, 2019, Plaintiff participated in a meeting with Pennycook and Dr. Douglas Dempster, the Dean of COFA, regarding a promotion for Plaintiff to Associate Professor of Practice.

22. Prior to the meeting, Plaintiff was concerned about the sexually charged environment that Pennycook's behavior toward female staff and students was causing as well as his questiong of Plaintiff concerning intimate matters. Plaintiff was also concerned that Pennycook may have maligned Plaintiff's performance and attitude and that Plaintiff' expression of opposition to Pennycook's actions may have been conveyed to Dempster. This concern was exacerbated during the meeting based on the actions of Dempster in tandem with Pennycook. That being the case, Plaintiff requested to speak with Dempster privately, following the meeting, regarding Pennycook. Rather than permit Plaintiff to speak with him privately, thus giving Plaintiff the opportunity to express his concerns, Dempster cut Plaintiff off and told Plaintiff that he would have no conversations with Plaintiff to which Pennycook was not present thus denying him the opportunity to report the actions of Pennycook which were violations of Title VII.

23. On April 8, 2019, Plaintiff, feeling the need to further address Pennycook's conduct, for the first time reported Pennycook's actions to the administration of UT. He reported his complaints about Pennycook's behavior related to sexually inappropriate comments to Andrew Dell'Antonio (Dell'Antonio), Associate Dean of Undergraduate Studies, and a member of COFA administration. He made this complaint as opposition to sexual harassment as a citizen speaking on a matter of public concern.

24. Plaintiff was told by Dell'Antonio that he would have to file a complaint with the

Division of Diversity and Community Engagement, Office for Inclusion and Equity ("OIE"). Plaintiff filed a formal complaint on the same day, April 8, 2019, in which he reported and opposed the sexualized conduct on the part of Pennycook directed against himself, female faculty members, staff and students. This was opposition pursuant to Title VII of the Civil Rights Act of 1964 and speaking out on a matter of public concern.

25. April 8, 2019 was the first time Plaintiff made a complaint to anyone in administration at UT regarding Pennycook's sexually charged comments. He had made no complaint to Dempster or to Lorenzo prior to this time.

26. Based on Plaintiff's complaint against Pennycook, the OIE initiated a formal investigation on May 6, 2019, indicating that they found the complaint worthy of investigation. Following the OIE investigation they issued a finding of SUBSTANTIAL EVIDENCE to find Pennycook in violation of the University's HOP 3-3031, UT's provisions pertaining to sexual misconduct.

27. Pennycook and Dempster were notified of the OIE's initiation of their investigation of Dr. Stamps' complaints no later than May 16, 2019. Assistant Dean Doreen Lorenzo was also advised of the complaint. In a "timeline of relevant facts" prepared by Dempster and sent to Jay Hartzell, President of UT, as a part of his response to the Faculty Grievance Panel's letter of findings (discussed below) Dempster wrote: "May 16, 2019: OIE informs me, Dean Dempster and Assistant Dean Doreen Lorenzo of Dr. Stamps' allegation of sexual misconduct against Dr. Pennycook in the course of OIE's investigation into the same."

28. At the time these individuals were informed about the complaints Plaintiff made to the OIE, they were specifically told not to retaliate against Plaintiff for having made the report.

29. Less than two weeks later, on May 29, 2019, in a meeting with Assistant Dean Doreen

Lorenzo, without the presence of a UT Human Resources representative, Ms. Lorenzo told Plaintiff that his contract with UT was not going to be renewed and terminated Dr. Stamps in contravention of UT's policy and procedure and without any explanation except to say that "AET is moving in a new direction."  This was the only reason given for the nonrenewal.  At this time, Lorenzo knew of Stamps complaint to the OIE.   This is the opposition and public concern complaint that preceded Stamps nonrenewal.

30. Lorenzo claims to be the person who made the decision to terminate Plaintiff.[1] Nonetheless, in the memo Dempster sent to Hartzell requesting that Hartzell set aside the advisory opinion of the Grievance Panel states that he consulted with and approved the "School's" decision not to renew the Plaintiff's contract.  The "School" would certainly include Pennycook who was the Plaintiff's supervisor and would, upon information and belief, be involved in any decision to terminate plaintiff.

31. The termination letter given to Dr. Stamps did not indicate his faculty rights or procedures for how to contest the termination, which was in violation of University policy.

32. Notwithstanding the failure of Lorenzo to advise Plaintiff of his rights, Plaintiff filed a grievance with the UT Grievance Committee.  In his grievance he alleged that he had been retaliated against because of the complaint he filed with the OIE against Pennycook for creating a sexually hostile environment and engaging in conduct that violated Title VII. He specifically alleged that Lorenzo's non-renewal of his contract was retaliation for having reported and opposed the conduct of Pennycook.

---

[1] In a later conversation with Lorenzo, Lorenzo stated to Plaintiff that "Doug (Dempster) didn't have anything to do with..." (terminating Plaintiff's contract) She stated that "... this was me coming talking about where this is going."

33. On June 4, 2020, The University Grievance Committee assembled a Grievance Panel to hear Dr. Stamps grievance. The Grievance Panel, made up of independent professors from various schools across the UT campus, heard witnesses and reviewed pertinent documents.

34. The Grievance Committee issued a finding that Plaintiff's claims of retaliation were substantiated. They also found that Plaintiff's contract should be renewed.

35. The Grievance Panel's opinion specifically referenced the fact that although COFA administration was specifically told not to take retaliatory action against Dr. Stamps following his complaints to the OIE, COFA administration did just that, while refusing to consult with UT Human Resources prior to doing so.

36. Since Lorenzo gave her first articulation that they were "going in a new direction" Defendant has given no less than four differing reasons for Plaintiff's non-renewal. None of these have merit since they were only brought up as part of a position statement prepared for the EEOC to respond to Plaintiff's EEOC complaint. Each of these articulations are untrue and constitutes pretext for the underlying retaliation for having made his protected reports of harassment and discrimination, as is his legal right to do.

37. Among the subsequent pretextual reasons given since Plaintiff was initially told he was being non-renewed are the following:

(1). Create a "clean slate" for the next permanent Chair of the DAET. This explanation was given to Plaintiff on July 9, 2019, by Lorenzo about the termination. UT Ombuds Mary Steinhardt was present at this meeting. Lorenzo could not identify or explain the reasons for why a clean slate would require or force Dr. Stamps' removal. At the time of this meeting, on May 29, 2019, there had been no documented discussions amongst AET faculty about any alleged "clean slate" or any changes to AET's direction.

Following the Faculty Grievance Panel in which Dr. Stamps grieved his non-renewal, the Panel noted "...COFA Administration'sl undermining of AET's autonomy and power to direct its program is very troubling and that [t]his is an extremely unusual situation at UT."

(2). The DAET is "moving away from" Music and Sound.  Lorenzo went so far as to say that Music and Sound (M&S) was going away completely as a reason for Dr. Stamps' termination, when interviewed by the OIE about his retaliation complaint.

Dr. Stamps first heard of this from the OIE investigator, William Nutt, who was assigned by UT to Dr. Stamps' complaint.  Dr. Stamps' expertise is in music technology and he coordinated and developed the M&S emphasis, of which there are four total in AET.

The assertion that AET was moving away from M&S turns on the facts.  Despite the assertion of a "moving away from" M&S, a new full-time faculty member in M&S was hired in late July 2019, after Dr. Stamps' employment was terminated.

(3).  Stamps' employment was not terminated for cause.  In an e-mail from Lorenzo, dated, dated July 3, 2019, when asked by Dr. Stamps for a clear reason for his termination, Lorenzo wrote, "you were not terminated for cause.  We chose not to renew your contract."  This statement is contradicted by the following pretextual articulations.

(4).  Stamps' performance was floundering.  This is clearly pretexual because Plaintiff had never been written up and was in fact promoted in early 2019 prior to his termination.

38.     Notwithstanding the findings of the Grievance Panel that Plaintiff's claim of retaliation was substantiated, Plaintiff later learned, through an Open Records Request, that the Grievance Panel had in fact recommended the renewal of Plaintiff's contract.  Nonetheless, the University, by and through Defendant Hartzell, with full knowledge of the Plaintiff's complaints against Pennycook, rejected the findings of the Grievance Panel and upheld COFA's decision to non-renew Plaintiff's

contract thereby terminating him.

39. Following his termination, Dr. Stamps filed a second complaint with the OIE for retaliatory termination.

40. After his termination and the filing of his retaliation complaint, Dr. Stamps was subjected to other forms of harassment, which consisted of a hostile work environment, including disparate treatment when compared with his fellow professors, violations of his academic freedoms through intimidation, removal from teaching assignments following his requested FMLA Leave and a refusal to retain him in his teaching role.

41. With respect to the original complaint Plaintiff made to the OIE about Pennycook, the OIE began a formal investigation on May 6, 2019, and found SUFFICIENT EVIDENCE to find Pennycook in violation of the University's HOP 3-3031. The allegations were analyzed under the University's Prohibition of Sex Discrimination, Sexual Harassment, Sexual Assault, Sexual Misconduct, Interpersonal Violation, and Stalking Policy (HOP 3-3031). The OIE found that Pennycook violated the University's provisions pertaining to sexual harassment and sexual misconduct. However, once again the University's administration, by way of then Provost Maurie McInnis, overturned the findings of the OIE that Pennycook had violated the University's Prohibition of Sex Discrimination, Sexual Harassment, Sexual Assault, Sexual Misconduct, Interpersonal Violation and Stalking Policy.

42. Following the Defendant's actions in terminating Plaintiff's employment by non-renewing his contract and creating a hostile environment, on September 11, 2019 Plaintiff notified Dempster of the enormous level of stress, anger and anxiety that the bullying and retaliation was causing him. Rather than address the underlying causes of the stress and anxiety, Dempster suggested that Plaintiff take FMLA. Stamps agreed to apply for FMLA since Dempster didn't express any

desire to alleviate the underlying causes. Shortly thereafter Plaintiff was notified that a list of scheduled classes had been sent out and all of Plaintiff's courses for Spring were cancelled, with no explanation.

43. On December 12, 2019 Plaintiff met with UT officials to discuss returning to work.

44. Following this meeting, Plaintiff was contacted by several students who expressed concern about why Plaintiff's Spring classes were being cancelled. The students told Plaintiff that they felt that they were being coerced not to sign up for Plaintiff's classes.

45. Plaintiff never got to return to teach the classes he was scheduled to teach during the Spring semester and has since not been returned to his teaching position.

## IV.
## FIRST CAUSE OF ACTION
### Title VII Retaliation

46. Plaintiff realleges and incorporates all of the allegations contained in the paragraphs of this Complaint set forth above.

47. Plaintiff has exhausted all of the federal administrative remedies in this cause by filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff filed a Charge of Discrimination within 300 days of the dates of the acts complained of and timely filed this suit within 90 days of receipt of the EEOC's Notice of Right to Sue.

48. Plaintiff's complaints of sex discrimination and sexual harassment to and about Dr. Bruce Pennycook and the OIE constitute protected activity under Title VII. Plaintiff's report of retaliation to UT administration through the OIE for having reported illegal activity constitutes protected activity under Title VII.

49. As a result of Plaintiff's protected activity, his contract of employment was non-renewed and he was thereby terminated from UT.

50. As a result of Plaintiff's protected activity, he was subjected to a hostile environment and further retaliation as described above.

51. As a result of Plaintiff's protected activity, UT cancelled classes he was scheduled to teach and removed him from teaching positions in the Spring of 2020.

52. As a result of Plaintiff's protected activity, UT put forth unfounded claims about misconduct and incompetence on the part of Plaintiff in an effort to justify their illegal actions against him.

53. The acts described above constitute illegal retaliation in violation of Plaintiff's legally protected rights.

54. As a result of Defendant's actions, Plaintiff has suffered economic and emotional harm for which he seeks compensation as well as any and all legal and equitable remedies available to him under the provisions of Title VII.

## V.
## SECOND CAUSE OF ACTION
## FIRST AMENDMENT CLAIM
## JAY HARTZELL, DOREEN LORENZO, BRUCE PENNYCOOK AND DOUG DEMPSTER

55. Plaintiff reincorporates and alleges all of the facts plead above.

56. The decision to nonrenew plaintiff's contract would not have occurred but for plaintiff's speech regarding the actions of Pennycook which were a matter of public concern.

57. Based on the facts above, Defendant Hartzell, in his official capacity as the President of The University of Texas, is being sued for injunctive relief in the form of the reinstatement of Plaintiff. The actions of Defendant Hartzell, in his individual capacity, in overturning the findings of the Faculty Grievance Panel and not reinstating Plaintiff constitute violations of the First

Amendment.

58.     The actions of Doreen Lorenzo, Doug Dempster and Bruce Pennycook, in their individual capacities, acting under color of state law, are liable for nonrenewing Plaintiff's contract in violation of the First Amendment. The decision was made shortly after his First Amendment speech and for a pretextural reason. There can be no question that speaking out about the fact that Pennycook's conduct in making inappropriate comments against female co-workers and students were a matter of public concern. Likewise, there can be no question that there was clearly established law preventing the actions of which Plaintiff complained of as well as prohibiting retaliation for engaging in speech protected by the First Amendment to the Constitution of the United States of America The individuals were acting under color of state law. The Plaintiff brings suit under 42 U.S.C. §1983 to remedy this concern.

## VI.

### CLAIM AGAINST MICHAEL BAKER FOR PROSPECTIVE RELIEF UNDER THE FMLA

59.  Michael Baker's actions, taken in his official capacity, in failing to return Plaintiff to his position after his FMLA leave constituted interference with Plaintiff's FMLA rights within the *Ex Parte Young* exception and Plaintiff is entitled to injunctive relief in the form of reinstatement.

## VII.

### ECONOMIC DAMAGES

60.     As a result of UT's violations of Title VII and the individual defendants' unlawful conduct, Plaintiff has suffered economic and actual damages, including past and future lost income, back wages, front pay, interest on back pay and front pay, lost benefits

under the contract or employment relationship, employment benefits in the past, and employment benefits in the future.

## VIII.

## COMPENSATORY DAMAGES

61. Plaintiff additionally brings suit for compensatory damages, including emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, injury to credit standing against UT for violations of Title VII and against the defendants named in their individual capacity. Plaintiff seeks punitive damages against defendants named in their individual capacity.

## IX.

## ATTORNEYS' FEES AND EXPERT FEES

62. If Plaintiff prevails in this matter, he seeks recovery of reasonable attorneys fees and expert fees as permitted by law.

## X.

## JURY DEMAND

Plaintiff demands a trial by jury of all the issues and facts in this case.

## XI.  PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

1. The Court assume jurisdiction of this cause;

2. The Court enter an order providing injunctive relief in the form of reinstatement;

3. The Court award Plaintiff economic damages as specified above;

      4.        The Court award punitive damages against individual defendants;

      5.        The Court award Plaintiff compensatory damages as specified above;

      6.        The Court award Plaintiff reinstatement or, in the alternative, front pay;

      7.        The Court award Plaintiff's reasonable attorneys' and expert fees and costs;

      8.        The Court award Plaintiff pre- and post-judgment interest at the highest rates allowed.

Plaintiff further prays for any such other relief as the Court may find proper, whether at law or in equity.

                      Respectfully Submitted,

                      **THORPE & HATCHER**
                      2549 Greenville Ave., Suite 200
                      Dallas, Texas 75206
                      214/969-5500
                      *thwlaw@airmail.net*

                      By:   */s/ Steven B. Thorpe*
                            Steven B. Thorpe
                            State Bar No. 19990500
                            Carla S. Hatcher
                            State Bar No. 09219500

                      **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

      I hereby certify that on April 19, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which automatically provided notice to the following CM/ECF participants:

Dominique G. Stafford
Texas Bar No. 24079382
Assistant Attorney General
General Litigation System
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
(512) 463-2120
FAX (512-320-0667
dominique.stafford@aog.tex.gov