# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **DR. JACK W. STAMPS,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **THE UNIVERSITY OF TEXAS AT** | § | |
| **AUSTIN; JAY HARTZELL, in his** | § | **Case No. 1:20-cv-01204-LY-SH** |
| **individual and official capacity;** | § | |
| **DOREEN LORENZO, BRUCE** | § | |
| **PENNYCOOK, and DOUG** | § | |
| **DEMPSTER, in their individual** | § | |
| **capacities; and MICHAEL BAKER, in** | § | |
| **his official capacity,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL**
**    UNITED STATES DISTRICT JUDGE**

Before the Court are Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint, filed July 28, 2021 (Dkt. 32); Plaintiff's Response, filed August 11, 2021 (Dkt. 34); and Defendants' Reply, filed August 18, 2021 (Dkt. 36). On September 20, 2021, the District Court referred all pending and future motions in this case to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 41.

## I.    Background

In the fall of 2017, The University of Texas at Austin ("UT") hired Plaintiff Jack W. Stamps as a lecturer in the College of Fine Arts ("COFA"). Plaintiff's Fourth Am. Compl. (Dkt. 22) ¶ 15. Plaintiff describes himself as "a distinguished professor, practitioner and author in the area of musical arts." *Id.* ¶ 10.  In March 2019, Plaintiff was promoted to Assistant Professor of Practice

in the COFA's new Department of Arts and Entertainment Technology ("DAET") and "was to hold his position pursuant to contract through August 31, 2020 but he was informed in May of 2019 that his contract of employment was not being renewed." *Id.* ¶¶ 15, 18.

Plaintiff alleges that "[d]uring his tenure at COFA Plaintiff was witness to sexually inappropriate conduct" by Bruce Pennycook, Chair of the DAET and Plaintiff's direct supervisor. *Id.* ¶ 20. Specifically, Plaintiff alleges that Pennycook made "sexual remarks about physical features of female students and staff," and asked Plaintiff about his sexual activities and his relationship with his "significant other," who also was a DAET faculty member and subordinate of Pennycook. *Id.* Plaintiff contends that Pennycook's comments were "deeply offensive" and "created a hostile work environment for Plaintiff." *Id.* Plaintiff alleges that he told Pennycook that he should "cease and desist" such offensive comments, but "Pennycook's behavior continued." *Id.* Plaintiff further alleges that after he told Pennycook to stop making offensive comments, Pennycook "developed a hostile attitude towards Plaintiff." *Id.*

On March 12, 2019, Plaintiff met with Pennycook and COFA Dean Douglas Dempster regarding his potential promotion to Associate Professor of Practice. Plaintiff alleges that, before the meeting, he was concerned that "Pennycook may have maligned Plaintiff's performance and attitude and that Plaintiff's expression of opposition to Pennycook's actions may have been conveyed to Dempster." *Id.* ¶ 22. Plaintiff contends that his concerns were realized based on Pennycook and Dempster's actions during the meeting. For example, Plaintiff alleges that he asked to speak to Dempster privately so that he could express his concerns about Pennycook's behavior, but "Dempster cut Plaintiff off and told Plaintiff that he would have no conversations with Plaintiff to which Pennycook was not present thus denying him the opportunity to report the actions of Pennycook which were violations of Title VII." *Id.*

On April 8, 2019, Plaintiff filed a formal complaint with UT's Division of Diversity and Community Engagement Office of Inclusion and Equity ("OIE") concerning Pennycook's alleged inappropriate conduct (the "OIE Complaint"). *Id*. ¶ 24. The OIE began a formal investigation into the OIE Complaint on May 16, 2019. Plaintiff alleges that Pennycook, Dempster, and COFA Assistant Dean Doreen Lorenzo then became aware of the OIE Complaint. *Id.* ¶ 27. Approximately two weeks later, on May 29, 2019, Plaintiff alleges that Lorenzo informed Plaintiff that his teaching contract would not be renewed because "[D]AET is moving in a new direction." *Id.* ¶ 29.

Plaintiff alleges that he then filed a grievance (the "Grievance") with the Faculty Grievance Committee, alleging that his contract had not been renewed in retaliation for having filed the complaint against Pennycook. Plaintiff alleges that the Faculty Grievance Committee Hearing Panel (the "Grievance Panel") issued a finding that "Plaintiff's claims of retaliation were substantiated," and that "Plaintiff's contract should be renewed." *Id.* ¶ 34. Nonetheless, Plaintiff alleges, UT, by and through UT President Jay Hartzell, "with full knowledge of the Plaintiff's complaints against Pennycook, rejected the findings of the Grievance Panel and upheld COFA's decision to non-renew Plaintiff's contract thereby terminating him." *Id.* ¶ 38.

Plaintiff alleges that he then filed a second complaint with the OIE for retaliatory termination. Plaintiff contends that as to his first complaint, the OIE initially found "sufficient evidence" that Pennycook violated UT's Prohibition of Sex Discrimination, Sexual Harassment, Sexual Assault, Sexual Misconduct, Interpersonal Violence, and Stalking Policy, but that "the University's administration, by way of then Provost Maurie McInnis, overturned the findings." *Id.* ¶ 41.

After his termination and the filing of his retaliation complaint, Plaintiff alleges that he was subjected to other forms of harassment, including "disparate treatment when compared to his fellow professors, violations of his academic freedoms through intimidation, removal from

teaching assignments following his requested FMLA Leave and a refusal to retain him in his teaching role." *Id.* ¶ 40. Plaintiff alleges that he notified Dempster on September 11, 2020 "of the enormous level of stress, anger and anxiety that the bullying and retaliation was causing him." *Id.* ¶ 42. Dempster suggested Plaintiff take leave under the Family and Medical Leave Act ("FMLA"), and Plaintiff did so. *Id.* ¶ 42. Plaintiff alleges that he met with UT officials on December 12, 2019, to discuss returning to work, but he "never got to return to teach the classes he was scheduled to teach during the Spring semester and has since not been returned to his teaching position." *Id.* ¶ 45.

UT argues that it made the decision to not renew Plaintiff's teaching contract because Plaintiff had performance issues, was combative with his colleagues and supervisors, and insisted on teaching courses that were not in sync with the overall direction of the DAET. UT also contends that it made the decision not to renew Plaintiff's teaching contract "before Stamps ever engaged in protected activity." Dkt. 32 at 6. UT admits, however, that Plaintiff did not receive official notice of his non-renewal until May 29, 2020—after Plaintiff filed his OIE Complaint against Pennycook. *Id.* UT also contends that it reinstated Plaintiff to an administrative position on January 21, 2020, and that Plaintiff "happily accepted the assignment." *Id.* at 12. UT also notes that Hartzell overturned the Grievance Panel's Advisory Opinion on July 21, 2020, after he concluded that Plaintiff's retaliation allegations were not substantiated. *Id.* at 13, 20.

On December 9, 2020, Plaintiff filed this lawsuit against UT; Hartzell, in his individual and official capacities; Michael Baker, Chair of the DAET, in his official capacity; and Pennycook, Lorenzo, and Dempster, all in their individual capacities (the "Individual Defendants"). In his Fourth Amended Complaint, Plaintiff alleges claims of: (1) Title VII retaliation against UT; (2) First Amendment retaliation under 42 U.S.C. § 1983 against Hartzell and the Individual

Defendants; and (3) FMLA interference against Baker and Hartzell. Plaintiff seeks monetary damages, injunctive relief in the form of reinstatement, and attorneys' fees and costs.

Defendants now move to dismiss Plaintiff's Fourth Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II.   Legal Standards

### A.  Rule 12(b)(1) Lack of Subject Matter Jurisdiction

A party seeking to challenge the court's subject matter jurisdiction to hear a case may file a motion under Rule 12(b)(1). *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The party claiming federal subject matter jurisdiction must show that the court indeed has that jurisdiction. *Willoughby v. U.S. ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013). A federal court properly dismisses a case or claim for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the claims. *Home Builders Ass'n of Miss.*, 143 F.3d at 1010. In deciding on a Rule 12(b)(1) motion, the court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Spotts v. United States*, 613 F.3d 559, 566 (5th Cir. 2010). The trial court is "free to weigh the evidence and satisfy itself" that subject-matter jurisdiction exists. *MD Physicians & Assocs., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992).

### B.  Rule 12(b)(6) Failure to State a Claim

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation

omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up).

### III.   Analysis

Defendants argue that Plaintiff's Fourth Amended Complaint should be dismissed under Rules 12(b)(1) and 12(b)(6) for the following reasons: (1) Plaintiff's Title VII retaliation claim against UT should be dismissed for failure to state a claim under Rule 12(b)(6);[1] (2) Plaintiff's First Amendment claims against the Individual Defendants should be dismissed for lack of subject matter jurisdiction and for failure to state a claim; and (3) Plaintiff's FMLA claims against Baker and Hartzell should be dismissed for lack of subject matter jurisdiction. The Court addresses each of these arguments in turn.

### A.  Plaintiff's Title VII Retaliation Claim Against UT

First, Plaintiff alleges that UT retaliated against him by failing to renew his teaching contract after he complained about Pennycook's inappropriate conduct, in violation of Title VII.

---

[1] Defendants also argue that any potential hostile work environment claim asserted in the Fourth Amendment Complaint should be dismissed under Rule 12(b)(6). Plaintiff has clarified that he is not asserting a hostile work environment claim. Accordingly, the Court need not address this argument.

### 1. Elements of a Title VII Retaliation Claim

To state a claim for retaliation in violation of Title VII, a plaintiff must establish that (1) he engaged in activity protected by Title VII; (2) the defendant took adverse action against him; and (3) a causal connection exists between the protected activity and the adverse action. *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021). A plaintiff need not submit evidence to establish a prima facie case at the pleading stage; rather, to survive a motion to dismiss, a plaintiff need only "plausibly allege facts going to the ultimate elements of the claim." *Id.*

To plausibly allege the ultimate element of causation, Plaintiff must plead facts permitting a reasonable inference that UT failed to renew his employment contract because of his complaints about Pennycook's inappropriate behavior. *Id.* The causal link required by the third prong of the prima facie case does not rise to the level of a "but for" standard. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). In other words, a plaintiff "need not prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element of a prima facie case." *Id.* At the pleading stage, a plaintiff is required "to allege facts permitting at least an inference of her employer's knowledge of her protected conduct in order to establish the required causal link between her conduct and the alleged retaliation." *Wright*, 990 F.3d at 434. Close timing between the protected activity and the adverse employment action is sufficient to show causal connection for purposes of a prima facie case. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016).

### 2. Objection to Defendants' Evidence

It is undisputed that Plaintiff has met the first two factors of his prima facie case. Plaintiff engaged in protected activity and his employment contract was not renewed.

Defendants argue that Plaintiff has failed to satisfy the third element by alleging sufficient facts to show a causal connection between Plaintiff's protected activity and UT's decision to not renew Plaintiff's employment contract. In support of this argument, Defendants rely on 169 pages of "documentary evidence" attached to their Motion to Dismiss, which purportedly show that the timeline in this case "does not support a plausible claim for relief as to causation." Dkt. 32 at 18. This "documentary evidence" includes:

(1) an OIE Data Intake Form documenting Plaintiff's April 8, 2019 Complaint (Exhibit A, Dkt. 32-1);

(2) Plaintiff's OIE Complaints and Grievances, along with 122 pages of UT investigative reports, internal memos and correspondence, and correspondence between UT and Plaintiff purporting to show that UT made its decision to terminate Plaintiff's contract in early March (Exhibit C, Dkt. 32-3);

(3) email correspondence among the Individual Defendants discussing possibly not renewing Plaintiff's teaching contract at the end of the 2019-20 school year (Exhibit G, Dkt. 32-7);

(4) a July 21, 2020 notification letter to Plaintiff that Hartzell was overturning the Faculty Grievance Committee's decision that Plaintiff's allegations of retaliation were substantiated based on Hartzell's finding that "the decision to renew was made in early March 2019" (Exhibit H, Dkt. 32-8); and

(5) a June 25, 2020 letter from Dempster to Hartzell asking Hartzell to set aside the June 4, 2020 Advisory Opinion of the Faculty Grievance Committee Panel finding that Plaintiff's retaliation allegations were substantiated (Exhibit I, Dkt. 32-9).

Defendants contend that this evidence conclusively shows "that the decision to non-renew Stamps' contract was made in early March 2019," and because Stamps did not file his first OIE Complaint until April 8, 2019, "the decision to not renew his contract could not have been caused by a complaint that was filed nearly a month later." *Id.* at 18.

Plaintiff argues that the Court should not consider this evidence in ruling on Defendants' Motion to Dismiss under Rule 12(b)(6). The Court agrees. In deciding a motion to dismiss under Rule 12(b)(6), if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d).

Therefore, in determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is generally limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

The Fifth Circuit Court of Appeals has recognized "one limited exception" to this rule: Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are (1) referred to in the plaintiff's complaint and (2) central to the plaintiff's claims. *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).[2]

Courts have found that documents are central to a plaintiff's claims "when they are necessary to establish an element of one of the plaintiff's claims." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). Such documents "ordinarily are things such as a contract, lease, sales invoice, and the like." *J&J Sports Prods., Inc. v. Sw. Texas Ent., Inc.*, No. DR-17-CV-045-AM-VRG, 2019 WL 1313474, at *4 n.1 (W.D. Tex. Jan. 23, 2019), *R. & R. adopted*, 2019 WL 2565255 (W.D. Tex. Mar. 27, 2019); *see also, e.g., Katrina Canal Breaches*, 495 F.3d at 205 (considering insurance contracts on which plaintiffs' claims were based); *Collins*, 224 F.3d at 499 (approving consideration of contract in determining if plaintiff alleged breach of contract claim).

---

[2] "This exception is a natural extension of Rule 10(c), which states that '[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.' Because such documents are considered part of the pleadings, they are not 'matters outside the pleadings' that trigger conversion to a motion for summary judgment under Rule 12." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011) (citations omitted).

But if a document referenced in the plaintiff's complaint "is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Kaye*, 453 B.R. at 662. Moreover, a defendant's "version of the facts contradicting the complaint's allegations" is not the type of document considered central to a plaintiff's claim. *J&J Sports Prods.*, 2019 WL 1313474, at *4 n.1; *see also Scanlan*, 343 F.3d at 537 (finding that university investigative report attached to motion to dismiss was not central to plaintiffs' claims and was "much more central to the University Officials' defenses").

Defendants have not shown that all of the documents attached to their Motion to Dismiss are referenced in Plaintiff's Fourth Amended Complaint and central to his claims. *Collins*, 224 F.3d at 498-99. First, Plaintiff did not refer to most of Defendants' exhibits in his Fourth Amended Complaint. For example, although Plaintiff refers to Hartzell's decision to overturn the decision of the Grievance Panel,[3] he does not refer to the actual letters submitted in Exhibits H and I. In addition, with the exception of Plaintiff's OIE Complaint and Grievance, the Fourth Amended Complaint does not refer to the great majority of the documents contained in Exhibit C.

Nor are any of Defendant's exhibits central to Plaintiff's claims, with the exception of Plaintiff's OIE Complaint and Grievance. The remaining exhibits are not central to Plaintiff's claims because they are not necessary to prove an element of his prima facie case. Rather, Defendants submit the exhibits to dispute and contradict the allegations in Plaintiff's Fourth Amended Complaint. *See J&J Sports Prods.*, 2019 WL 1313474, at *4 n.1 (stating that defendant's "version of the facts contradicting the complaint's allegations" is not type of document considered central to plaintiff's claim). These exhibits may be central to Defendants' defenses in this case, but they are not central to Plaintiff's claims. *Scanlan*, 343 F.3d at 537; *see also Ambler v. Williamson*

---

[3] *See* Dkt. 22 ¶ 38.

*Cnty., Texas*, No. 1-20-CV-1068-LY, 2021 WL 769667, at \*4 (W.D. Tex. Feb. 25, 2021) (excluding video attached to defendant's motion to dismiss which was central to defense, not plaintiffs' claims); *Wilson v. EZ Exit Now, LLC*, No. CV H-18-3673, 2019 WL 2453828, at \*3 (S.D. Tex. May 15, 2019) (striking defendant's exhibits of employees' accounts and defendant's handbook submitted in opposition to facts asserted in complaint and thus not central to plaintiff's claims), *R. & R. adopted*, 2019 WL 2448630 (S.D. Tex. June 12, 2019).

Defendants also argue that the Court can consider these exhibits because, "[w]here the allegations in the complaint are contradicted by facts established by documents attached as exhibits to the complaint, the court may properly disregard the allegations." Dkt. 36 at 5 (quoting *Bar Grp., LLC v. Bus. Intel. Advisors, Inc.*, 215 F. Supp. 3d 524, 541 (S.D. Tex. 2017)). This argument is misplaced because Defendants rely not on documents Plaintiff attached his complaint, but on documents they attached to their motion. For the Court to consider such documents, Defendants must show that they were referenced in the Fourth Amended Complaint and are central to Plaintiff's claims.

Even were the Court to consider Defendants' exhibits, they do not conclusively negate Plaintiff's prima facie case of retaliation. Instead, they merely support Defendants' allegations that they were considering whether to renew Plaintiff's employment contract in March 2019. It is undisputed that Defendants did not officially renew Plaintiff's employment contract until May 29, 2019, after Plaintiff filed his OIE Complaint. As noted, the causal link required by the third prong of the prima facie case does not rise to the level of a "but for" standard, and the plaintiff "need not prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element of a *prima facie* case." *Gee*, 289 F.3d at 345. Thus, while Defendants' exhibits may support their theory that they had decided not to renew Plaintiff's

11

employment contract before he filed his OIE Complaint, they do not negate the possibility that the OIE Complaint could have been a factor in Defendants' decision.

For these reasons, the Court has not considered any of Defendants' exhibits in addressing their Rule 12(b)(6) Motion except Plaintiff's April 9, 2020 OIE Complaint (Dkt. 32-1; Dkt. 32-3 at 12-14) and Plaintiff's March 29, 2020 "Grievance of 'Termination' of Contract" letter to the Faculty Grievance Committee. (Dkt. 32-3 at 2-9).[4]

### 3.   Plaintiff Has Alleged a Prima Facie Case

The Court finds that Plaintiff has sufficiently alleged facts in his Fourth Amended Complaint showing a causal connection between his protected activity and the adverse employment action. Plaintiff alleges that (1) he filed his first OIE Complaint on April 9, 2019, complaining about Pennycook's inappropriate behavior (Dkt. 22 ¶ 24); (2) Pennycook, Dempster and Lorenzo were notified of the complaint "no later than May 16, 2019" (*Id.* ¶ 27); and (3) on May 29, 2019, Plaintiff was notified that his employment contract was not being renewed (*Id.* ¶ 29). Defendants do not dispute any of these facts.[5]

"At the prima facie case stage, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (cleaned up). The Fifth Circuit has found a period of up to two-and-a-half months between the protected activity and the adverse employment action to be sufficient to show a causal connection at the motion to dismiss stage.

---

[4] The Court has not considered any attachments to the OIE Complaint or Grievance.

[5] UT argues that its exhibits (the OIE internal reports and Harzell's decision letter) "show that the decision to non-renew Stamp's contract was made in early March 2019" and, therefore, Plaintiff has failed to establish causation. Dkt. 32 at 18. As noted, the Court does not consider such extrinsic documents at the motion to dismiss stage. Even if they were properly considered, these documents appear merely to create a fact issue as to causation.

*Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019); *see also Outley*, 840 F.3d at 219 (holding that "the close timing between [plaintiff's] protected activity and the denial of a raise—about two months—is sufficient to show causal connection for purposes of a *prima facie* case"); *Feist v. La., Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (stating that "a time lapse of up to four months" may be sufficiently close to show causation). The six-week time period between Plaintiff's filing of his OIE Complaint and his adverse employment action is sufficient to show a causal connection at the pleading stage.

Because Plaintiff has alleged sufficient facts to state a plausible prima facie retaliation claim against UT at the pleading stage, Defendants' Motion to Dismiss his retaliation claim should be denied.

## B.  Plaintiff's First Amendment Claims Under Section 1983

Next, Plaintiff alleges a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 against Hartzell and the Individual Defendants. Section 1983 liability results when a "person" acting "under color of" state law deprives another of rights "secured by the Constitution" or federal law. 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Thus, the plaintiff must identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

13

### 1.   Official Capacity Claim Against Hartzell

Plaintiff alleges that Hartzell, in his individual capacity, violated his First Amendment rights in overturning the findings of the Faculty Grievance Panel and in not reinstating Plaintiff to his teaching position. Plaintiff contends that his complaints to the OIE "constitute matters of public concern which are protected by the First Amendment and that Hartzell's refusal to accept the grievance committee's findings and put him back to work violated the First Amendment." Dkt. 34 at 6. Defendants argue that Plaintiff's official capacity claim against Hartzell is barred by sovereign immunity.

The Eleventh Amendment provides that: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Eleventh Amendment codified the sovereign immunity of the states. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997). "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). "A State may waive its sovereign immunity at its pleasure, and in some circumstances, Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Id.* at 253-54. "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

It is well established that sovereign immunity applies not only to actions in which a state itself is the named defendant, but also to actions against state agencies and instrumentalities. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). "[A] suit against an arm or instrumentality of the State is treated as one against the State itself." *Lewis v. Clarke*, 137 S. Ct. 1285, 1293 (2017).

Similarly, lawsuits brought against employees in their official capacity "represent only another way of pleading an action against an entity of which an officer is an agent," and they also may be barred by sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). In the absence of abrogation by Congress, waiver by the state, or application of an exception, state sovereign immunity bars suit. *Texas Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1124 (2021).

"The University of Texas at Austin is 'inarguably a state agency,' that is entitled to sovereign immunity." *Sissom v. Univ. of Texas High Sch.*, 927 F.3d 343, 348 (5th Cir. 2019) (quoting *Saenz v. Univ. Interscholastic League*, 487 F.2d 1026, 1027 (5th Cir. 1973)). Because Hartzell is being sued in his official capacity as President of UT, Hartzell is entitled to sovereign immunity with regard to Plaintiff's monetary claims. *Haverkamp v. Linthicum*, 6 F.4th 662, 669 (5th Cir. 2021) (sovereign immunity bars suits against state actors in their official capacities that effectively are suits against a state).

Plaintiff's claims for prospective injunctive relief against Hartzell in his official capacity also are barred by sovereign immunity unless an exception applies. Relevant here is the exception created in *Ex parte Young*, 209 U.S. 123 (1908), under which "a litigant may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020). There are three basic elements of a lawsuit under *Ex parte Young*. The suit must (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief that will redress ongoing conduct; and (3) allege a violation of federal, not state, law. *Id.* To determine whether the exception applies, courts conduct a "straightforward inquiry" and do not consider the merits of the underlying claims. *Green Valley Special Util. Dist. v. City of Schertz, Texas*, 969 F.3d 460, 471 (5th Cir.

2020). The burden of proof is on the party asserting jurisdiction. *Laufer v. Mann Hosp.*, *L.L.C.*, 996 F.3d 269, 271 (5th Cir. 2021).

In *Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 320 (5th Cir. 2008), the defendant university argued that a former state university employee's claim for reinstatement against the president of the university in his official capacity did not fall within the *Ex parte Young* exception to Eleventh Amendment immunity. The Fifth Circuit disagreed, holding that "a request for reinstatement is sufficient to bring a case within the *Ex parte Young* exception to Eleventh Amendment immunity, as it is a claim for prospective relief designed to end a continuing violation of federal law." *Id.* at 324; *see also Sternadel v. Scott*, 254 F.3d 1080, 2001 WL 56362854, at *2 (5th Cir. 2001) (holding that motion to dismiss should not have been granted on the basis of Eleventh Amendment immunity where the plaintiff sought prospective relief in the form of reinstatement); *Warnock v. Pecos Cnty., Texas*, 88 F.3d 341, 343 (5th Cir. 1996) (holding that plaintiff's claim for prospective relief (reinstatement) was not barred by sovereign immunity).[6]

Because Plaintiff has asserted that Hartzell's failure to reinstate him to his teaching position was unlawful and he seeks reinstatement to that position, Plaintiff has alleged prospective relief for an ongoing violation of federal law against Hartzell. *See Nelson*, 535 F.3d at 324 (holding that the district court should not have dismissed claim for reinstatement against university president since it fell within *Ex parte Young* exception); *Hays v. LaForge*, 113 F. Supp. 3d 883, 893 (N.D.

---

[6] Despite this clear precedent, Defendants argue that the *Ex parte Young* exception does not apply here because Plaintiff has failed to show that Hartzell caused Plaintiff's injury or that he could redress it. Defendants argue that "to be amenable to suit under *Ex parte Young*, the state actor must both possess 'the authority to enforce the challenged law' and have 'a sufficient connection to the enforcement of the challenged act.'" Dkt. 36 at 7 (relying on *City of Austin v. Paxton*, 943 F.3d 993, 998-1002 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 1047 (2021), and *Okpalobi v. Foster*, 244 F.3d 405, 426, 429 (5th Cir. 2001)). The cases on which Defendants rely concern the constitutionality of state statutes and state officials' connection to the enforcement of those statutes. This case does not concern enforceability of a state statute. Here, Plaintiff alleges that Hartzell personally overturned the Grievance Panel's decision and failed to reinstate him to his teaching position, and the cases Defendants cite are inapposite.

Miss. 2015) (holding that plaintiff's claim for reinstatement against president of university fell within *Ex parte Young* exception where plaintiff alleged he had been removed as division chair in retaliation for exercising First Amendment rights). Accordingly, *Ex parte Young* permits Plaintiff's Section 1983 claim for prospective injunctive relief in the form of reinstatement against Hartzell in his official capacity.

### 2. Individual Capacity Claim Against Hartzell

Defendants also argue that Plaintiff has failed to state a plausible First Amendment retaliation claim against Hartzell. "As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). To state a First Amendment retaliation claim under Section 1983, a public employee must allege facts showing: "(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015). Defendants argue that Plaintiff has failed to allege sufficient facts to meet the fourth factor.[7]

To show causation,

> a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury. It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.

---

[7] Based on the record before the Court, it is not clear whether Plaintiff was speaking as a citizen when he complained about Pennycook's behavior. The Court need not address this issue because Defendants did not move for dismissal on this basis.

*Nieves*, 139 S. Ct. at 1722 (internal citations and quotation marks omitted); *see also Jones v. Hosemann*, 812 F. App'x 235, 239 (5th Cir. 2020) (stating that plaintiff "must plead that the individual defendants' 'animus against [his] exercise of First Amendment rights is a link in the causal chain that [led] to [his] firing'") (quoting *Sims v. City of Madisonville*, 894 F.3d 632, 639 (5th Cir. 2018)).

Plaintiff alleges that Hartzell violated the First Amendment "in overturning the findings of the Faculty Grievance Panel and not reinstating Plaintiff." Dkt. 22 ¶ 12. But to show causation, Plaintiff must allege sufficient facts to show that Hartzell violated the First Amendment by overturning the findings of the Grievance Panel based on an alleged "animus" toward his First Amendment activity (the filing of his OIE Claim). *Jones*, 812 F. App'x at 239. Plaintiff has alleged no facts to show any such connection.

While close timing between an employee's protected activity and an adverse action may provide the "causal connection" required to make out a prima facie retaliation case,[8] "the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case." *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002) (citation omitted). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Plaintiff's First Amendment claim against Hartzell is based on Hartzell's decision on July 21, 2020,[9] to overturn the Grievance Panel's decision, fifteen months after Plaintiff filed his OIE

---

[8] *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019).

[9] Dkt. 36 at 9; Dkt. 22 at 38.

Complaint. Under Fifth Circuit precedent, a fifteen-month gap is too long to show causation by itself. *Garcia*, 938 F.3d at 242 (stating that fifteen-month gap was too long to show causal connection); *see also Dailey v. Shintech, Inc.*, 629 F. App'x 638, 643 (5th Cir. 2015) ("A year and a half between [plaintiff's] protected activity and his employment termination is not '[c]lose' timing."); *Clark Cnty. Sch. Dist.*, 532 U.S. at 274 ("Action taken (as here) 20 months later suggests, by itself, no causality at all."); *Raggs*, 278 F.3d at 472 (finding five-month gap insufficient to show causation). Standing alone, the timing between Plaintiff's speech and the nonrenewal of his employment contract is insufficiently close to permit a plausible inference that the nonrenewal was causally connected to his speech. *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019).

### 3. Claims Against the Individual Defendants

Plaintiff further alleges that Lorenzo, Dempster and Pennycook "are liable for nonrenewing Plaintiff's employment contract in violation of the First Amendment." Dkt. 22 ¶ 58. As noted, to show causation, Plaintiff must allege sufficient facts to show that the Individual Defendants violated his First Amendment rights by not renewing his employment contract based on an alleged "animus" toward his First Amendment activity. *Jones*, 812 F. App'x at 239. In *Jones*, a First Amendment retaliation case, the Fifth Circuit held that the district court erred in finding sufficient "the sequencing of events leading up to [plaintiff's] firing" because "that allegation alone is not enough . . . to infer that each *individual defendant* acted with a retaliatory 'state of mind.'" 812 F. App'x at 240 (quoting *Iqbal*, 556 U.S. at 683).

Other than alleging that Defendants "were aware of his complaints," Dkt. 34 at 15, and that "[t]he decision was made shortly after his First Amendment speech," Dkt 22 ¶ 58, Plaintiff alleges no facts to show that the nonrenewal decision was made based on an alleged animus toward his First Amendment activity. Accordingly, Plaintiff has failed to allege sufficient facts to meet the

causation element of his prima facie case and allege a plausible claim of First Amendment retaliation against the Individual Defendants.

### 4. Qualified Immunity

The Individual Defendants raised the qualified immunity defense in their Motion to Dismiss. Dkt. 32 at 15-19. Even if Plaintiff had alleged a plausible claim of First Amendment retaliation against the Individual Defendants, he has failed to overcome their defense of qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

> When a defendant invokes qualified immunity, the burden shifts to the plaintiff to plead specific facts to overcome the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). To discharge this burden, plaintiffs must successfully allege that the defendants "violated a statutory or constitutional right, and . . . that the right was 'clearly established' at the time of the challenged conduct."

*Terwilliger v. Reyna*, 4 F.4th 270, 284 (5th Cir. 2021) (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)).

Plaintiff alleged no facts to support either factor. *See* Dkt. 34 at 15.[10] Therefore, Plaintiff has failed to sustain his burden to demonstrate that the qualified immunity defense is inapplicable, and the Individual Defendants are entitled to qualified immunity from Plaintiff's claims against them.

---

[10] Instead of alleging facts to overcome the qualified immunity defense, Plaintiff argues that Defendants' "Motion to Dismiss based on qualified immunity is premature" because "Defendants have filed no answer whatsoever and no defenses upon which it intends to rely." Dkt. 34 at 15. Plaintiff is mistaken. While the defense of qualified immunity must be pled by the defendant, *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009), it can be raised in a motion to dismiss or even a motion for summary judgment. *See Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 772 (5th Cir. 2017); *Pasco*, 566 F.3d at 578. In addition, Plaintiff is incorrect that the burden does not shift to the plaintiff when a defendant invokes qualified immunity. *Terwilliger v. Reyna*, 4 F.4th 270, 284 (5th Cir. 2021).

*See Wesley v. LeBlanc*, No. 1:20-CV-00243, 2021 WL 1219982, at *4 (W.D. La. Mar. 15, 2021) (finding that defendant was entitled to qualified immunity where plaintiff failed to respond to defendant's assertion of qualified immunity), *R. & R. adopted*, 2021 WL 1218493 (W.D. La. Mar. 30, 2021).

## C.  FMLA Claims

Finally, Defendants argue that Plaintiff's FMLA claims against Baker and Hartzell should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). In response, Plaintiff states that he is withdrawing "any and all claims under the FMLA." Dkt. 34 at 7. Accordingly, Plaintiff's FMLA claims should be dismissed under Rule 12(b)(1).

## IV.   Leave to Amend

Plaintiff seeks leave to file a fifth amended complaint if the Court finds any of his claims deficient. Dkt. 34 at 16. Defendants oppose leave to amend, contending that it would cause undue delay and would be futile. Dkt. 36 at 10.

Under Federal Rule of Civil Procedure 15(a)(2), courts "should freely give leave when justice so requires." Courts properly exercise their discretion to deny leave to amend "for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility." *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 575 (5th Cir. 2021). Absent such factors, leave to amend should be "freely given." *Id.* It is not an abuse of discretion to deny such leave where the plaintiff "had the opportunity to cure and failed"; where the plaintiff "did not exercise diligence," including attempting to raise facts which were "available previous to the district court's opinion"; or where leave to amend would be futile. *Id.* An amendment is considered futile if it would not state a claim on which relief could be granted. *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016).

Here, Plaintiff "had the opportunity to cure and failed." *Stevens*, 17 F.4th at 575. Defendants filed two previous motions to dismiss, and Plaintiff has been permitted to amend his complaint four times. At a certain point, a plaintiff has pled his "best case." *See Baldwin v. Sullivan*, No. 1:18-CV-36-RP, 2018 WL 5020028, at *7 (W.D. Tex. Oct. 15, 2018) (stating that plaintiff has pleaded her best case after she is "apprised of the insufficiency" of her complaint). Any amendment at this stage of the case would cause undue delay, and Plaintiff has presented no facts or legal arguments showing an amendment would not be futile. *Million v. Cos-Mar Co.*, No. 21-30250, 2022 WL 317662, at *4 (5th Cir. Feb. 2, 2022) (affirming district court's decision denying amendment). For these reasons, Plaintiff's request for leave to amend his Fourth Amended Complaint should be denied.

## V.    Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendants' Motion to Dismiss (Dkt. 32).

The Court **RECOMMENDS** that the District Court **DENY** Defendants' Motion as to Plaintiff's Title VII retaliation claim against The University of Texas at Austin.

The Court **RECOMMENDS** that the District Court **GRANT** the Motion to as to Plaintiff's First Amendment and FMLA claims against the Individual Defendants and **DISMISS** the Individual Defendants from this lawsuit.[11]

The Court **FURTHER RECOMMENDS** that Plaintiff's Request for Leave to Amend be **DENIED**.

---

[11] If the District Court adopts this Report and Recommendation, the only claim remaining will be Plaintiff's Title VII retaliation claim against UT.

## VI.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on February 22, 2022.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE