**FILED**

January 09, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: ___Christian Rodriguez___

DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

**DR. JACK W. STAMPS, JR.,**
Plaintiff,

**vs.**

**UNIVERSITY OF TEXAS AT AUSTIN,**
Defendant.

**CIVIL ACTION NO. 1:20-cv-01204-SH**

**MOTION TO VOID SETTLEMENT AGREEMENT UNDER RULE 60(b)**

TO THE HONORABLE MAGISTRATE JUDGE SUSAN HIGHTOWER:

My name is **Dr. Jack W. Stamps, Jr.**, and as the Plaintiff in this case, I am respectfully asking this Court to void the Settlement Agreement executed on or around June 9, 2023, pursuant to Federal Rule of Civil Procedure 60(b). I make this motion based on the concealment of material facts, fraudulent inducement, and procedural deficiencies by the University of Texas at Austin during the settlement negotiations. I believe this concealment has harmed not only me but also undermined the integrity of this judicial process.

I request a hearing on this matter to fully present evidence supporting my claims, including documents and testimony that demonstrate how critical facts were concealed during the settlement process. This motion also highlights systemic patterns of retaliation and procedural misconduct within the University of Texas System, which, while not directly named as a party here, are relevant to understanding the broader context of this case.

## I. INTRODUCTION

This motion arises from critical information that was concealed during the settlement negotiations in this case, specifically regarding a Behavioral Risk Assessment Committee (BRAC) investigation and its defamatory findings against me. These concealed facts, which I only discovered after the settlement was executed, directly undermine the validity of the Settlement Agreement and materially affect the fairness of this case. This motion is brought pursuant to Federal Rule of Civil Procedure 60(b) to seek relief from a judgment that was predicated on a fundamentally flawed agreement.

At the time of the settlement, I was unaware of the BRAC investigation, and the defamatory allegations contained therein. I believe this information was intentionally withheld by the University of Texas at Austin during the discovery phase of the litigation and throughout the settlement process. The BRAC's secretive practices, coupled with the lack of due process in its proceedings, caused significant harm to my reputation and career, and this harm continues to impact me today.

I acknowledge that I have an active appeal in the Fifth Circuit Court of Appeals challenging the dismissal of a defamation and due process lawsuit, the challenge of which is based on the Settlement Agreement now being challenged in this motion. <u>My intent is not to conflict with or bypass the appellate process but to address a foundational issue that directly affects the appeal. Resolving the validity of the Settlement Agreement at this stage would ensure clarity and procedural fairness for both this Court and the appellate court, promoting judicial efficiency and upholding the integrity of the judicial process.</u>

As a pro se litigant, I respectfully request that the Court take into account my non-attorney status when evaluating procedural aspects of this motion. My aim is to present my case in good faith and seek relief from the harm caused by the concealed information and procedural deficiencies surrounding the Settlement Agreement. Courts have consistently held that filings by pro se litigants should be liberally construed to ensure fairness (*Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

For these reasons, I respectfully ask this Court to void the Settlement Agreement, reopen the case, and grant further relief as deemed appropriate.

## II. FACTUAL BACKGROUND

### A. Dismissal Based on Settlement Agreement

This case was dismissed with prejudice on June 9, 2023, following the execution of a Settlement Agreement. At the time of the settlement, I was unaware of key

facts that had been withheld by the University of Texas at Austin, including a Behavioral Risk Assessment Committee (BRAC) investigation conducted against me. This investigation contained defamatory and baseless allegations. Moreover, the extensive BRAC files related to this investigation were not disclosed by the defendant during the discovery phase of the lawsuit. Had I known about the existence of the BRAC or its contents, I <u>would not</u> have agreed to the terms of the settlement agreement.

**B. Original Retaliation Claims**

My initial complaint detailed systemic retaliation against me after I engaged in protected activities, including:

1. Reporting sexual harassment by a colleague;

2. Opposing a hostile work environment;

3. Challenging administrative decisions that violated university policies.

The concealed BRAC investigation and related defamatory statements further substantiate my original claims of retaliation and demonstrate the lengths to which the University went to harm my professional reputation.

**C. Behavioral Risk Assessment Committee (BRAC)**

The Behavioral Risk Assessment Committee (BRAC) at the University of Texas at Austin, originally formed from the Threat Assessment Team (TAT), is tasked with addressing troubling behaviors involving staff, faculty, and unaffiliated

individuals. Despite its stated purpose of ensuring campus safety, the BRAC operates in secrecy, without transparency, oversight, or inclusion in the University's Handbook of Operating Procedures.

A defining feature of the BRAC is its practice of conducting investigations without notifying the individuals it evaluates. In my case, the BRAC relied on unsubstantiated allegations, including defamatory accusations of "threatening behavior" and "stalking," without ever interviewing me or corroborating the claims. These included accusations, written in a highly contrived and concerted manner, from a colleague who claimed, among many more false statements, that I put his family's safety at risk and characterized my actions as those of a "stalker" (EX.A). The BRAC never contacted me about it.

Compounding this, former Dean Douglas Dempster made an offensive and profoundly inappropriate comment, stating, among other things, "[a]t least he has not accused you of running a pedophile ring in the basement of a pizza parlor" (EX.B). This remark, which was shared with top university administrators, demonstrates not only a lack of professionalism but also a callous disregard for the severity of the situation. The "situation" involved my publicly addressing student concerns about retaliation and sexual misconduct within the College of Fine Arts—serious issues that deserved thoughtful attention, not mockery. The BRAC's lack of due process caused significant harm to my reputation and career, illustrating a broader pattern of retaliation and defamation.

One particularly egregious error occurred when the University of Texas Police Department (UTPD), relying on BRAC input, mistakenly identified my father, **Jack W. Stamps, Sr.**, as the alleged threat in a Threat Mitigation Sheet (EX.C). This misidentification highlights the systemic failures in BRAC's investigative methods and was deeply disturbing for my father who, coincidentally, is a retired career investigator for the State of Texas.

To clarify, the examples cited above are drawn from the 125 pages of documents I received through open records requests from UT Austin, which pertain to the concealed BRAC investigation conducted against me. These documents were created well before the discovery phase of this lawsuit yet were conspicuously absent from the materials UT Austin produced in response to discovery requests.

Finally, the BRAC's secretive practices raise serious concerns about its fairness and accountability. Instead of ensuring campus safety, the BRAC's methods have facilitated retaliation, defamation, and procedural deficiencies, underscoring the need for this Court to address these systemic failures as part of its review.

## D. Public Safety and Transparency Concerns

The failures of the BRAC and UTPD raise serious concerns about campus safety and transparency. Without rigorous threat assessment protocols, the University risks endangering students, faculty, and staff by either failing to address genuine threats or wrongfully targeting individuals without cause.

These deficiencies not only harmed me but also raise broader concerns about the effectiveness and accountability of BRAC and similar committees at other institutions. Addressing these systemic failures in this case could set a crucial precedent for ensuring fairness and transparency in campus safety processes nationwide.

## E. Inclusion of the UNIVERSITY OF TEXAS SYSTEM as a Party

Based on the broader organizational and operational structure of the University of Texas System, I believe that the UT System should also be included as a party to this case. Judge Henry J. Bemporad of this Court, in Stamps v. University of Texas System et al., SA-24-CV-294-HJB, determined that the UT System plausibly had the authority to make employment-related decisions at its constituent institutions, including retaliation claims. (*See Order EX.D*) Similarly, in this case, the UT System's systemic involvement, including its oversight of procedural processes such as the Behavioral Risk Assessment Committee (BRAC), necessitates its inclusion as a party to ensure accountability.

## III. LEGAL ARGUMENT

## A. Relief Under Rule 60(b)(3) for Fraudulent Inducement

Under **Rule 60(b)(3)**, a judgment may be set aside when fraud, misrepresentation, or misconduct has materially affected the proceedings. The University's failure to disclose the BRAC investigation and its defamatory

findings deprived me of the ability to make an informed decision regarding the Settlement Agreement.

Courts recognize that the concealment of material facts constitutes fraudulent inducement. For instance, in **Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co., 20 S.W.3d 692, 698 (Tex. 2000)**, the court held that withholding material information during negotiations undermines the integrity of agreements. Similarly, the University's nondisclosure of the BRAC files and related defamatory content directly impacted my decision to settle. Had I been aware of the investigation and its baseless accusations, I would not have agreed to the terms of the settlement.

## B. Relief Under Rule 60(b)(6) for Extraordinary Circumstances

Rule 60(b)(6) allows relief for extraordinary circumstances. In this case, the systemic concealment of material facts, coupled with the procedural deficiencies of the BRAC and UTPD, constitutes extraordinary circumstances justifying relief.

The egregious misidentification of my father in the Threat Mitigation Sheet and the defamatory remarks attributed to me, including accusations of conspiracy, reflect extraordinary failures in investigative rigor. As noted, in **re Poly-Am., L.P., 262 S.W.3d 337, 348 (Tex. 2008)**, allowing a settlement obtained under such circumstances to stand undermines public confidence in the fairness of judicial processes.

**C. Public Policy Considerations**

Allowing a settlement agreement obtained through concealment and misrepresentation to stand undermines public confidence in the judicial system. It also sets a dangerous precedent, incentivizing similar misconduct in future cases. Courts have a responsibility to ensure that settlement agreements are based on full transparency and fairness.

In **City of Hempstead v. Kmiec, 902 S.W.2d 118, 122 (Tex. App.—Houston [1st Dist.] 1995, no writ)**, the court emphasized that sovereign immunity does not shield entities from liability for intentional torts, such as defamation. Similarly, the defamatory actions arising from the BRAC investigation demonstrate conduct that should not be protected.

## IV. RELIEF REQUESTED

For the reasons stated above, I respectfully request that this Court:

1. Void the Settlement Agreement executed on or around June 9, 2023;
2. Vacate the dismissal with prejudice and reopen the case for further proceedings, including:
    - Investigating the BRAC investigation and its defamatory findings;
    - Allowing me to present evidence and testimony during a hearing on this matter;
    - Addressing the broader procedural and transparency issues raised by this case;

3. Consider reinstatement to my prior or a comparable position at the University of Texas at Austin as an equitable remedy, should the Court find it appropriate after reopening the case;

4. Grant such other and further relief as the Court deems just and proper.

## V. PRO SE STATUS AND REQUEST FOR EQUITABLE CONSIDERATION

As a pro se litigant, I ask the Court to take my non-attorney status into account when evaluating procedural matters, such as statutes of limitations and deadlines. I have done my best to present my case clearly and in good faith, despite not having formal legal training. Courts have consistently held that filings by pro se litigants should be liberally construed to ensure fairness (*Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

I have acted in good faith to address significant issues and seek equitable relief to ensure justice is served. Thank you for your time and attention.

Sincerely and mindfully,

**Dr. Jack W. Stamps, Jr.**
1229 Wiltshire Avenue
San Antonio, Texas 78209
Telephone: (210) 849-5347
Email: jackwstamps@gmail.com
**Pro Se Plaintiff**

**LIST OF EXHIBITS**

**Exhibit A**: Email from colleague accusing Plaintiff of behavior that allegedly endangered his family's safety and characterizing Plaintiff as a "stalker," accusations that were incorporated into BRAC proceedings without investigation or corroboration.

**Exhibit B**: Email from Dean Douglas Dempster trivializing Plaintiff's concerns with an inappropriate and offensive remark about a "pedophile ring in the basement of a pizza parlor," demonstrating a lack of professionalism and disregard for Plaintiff's reputation.

**Exhibit C**: Threat Mitigation Sheet produced by the University of Texas Police Department (UTPD), which erroneously identifies Plaintiff's father as the alleged threat, underscoring systemic failures in BRAC's investigative process. Plaintiff was never contacted by the UTPD (or BRAC) on any of these matters.

**Certificate of Service**

I hereby certify that a copy of the foregoing Motion to Void Settlement Agreement has been served upon all counsel of record via email mail on this January 9, 2025, addressed to:

William D. Wassdorf
Office of the Attorney General
General Litigation Division
P.O. Box 12548 (MC-019)
Capitol Station
Austin, TX 78711
Telephone: 512-936-1666
Fax: 512-320-0667
Email: will.wassdorf@oag.texas.gov

**Dr. Jack W. Stamps, Jr.**

**Robert S Davis**

| | |
|---|---|
| **From:** | Lorenzo, Doreen |
| **Sent:** | Tuesday, August 25, 2020 8:19 PM |
| **To:** | Dukerich, Janet M; Kimbrough, Carmen |
| **Cc:** | Dempster, Douglas J |
| **Subject:** | FW: Concerns and Fears over Jack Stamps |

Dear Janet and Carmen,

Here is the email from David Cohen. I also spoke to him. He is quite concerned about his physical safety and what Jack will try to do to him professionally.

Doreen

---

**From:** "Cohen, David S" <ds.cohen@austin.utexas.edu>
**Date:** Tuesday, August 25, 2020 at 1:00 PM
**To:** "Lorenzo, Doreen" <doreen.lorenzo@austin.utexas.edu>, "Baker, Michael" <michael.baker@austin.utexas.edu>
**Subject:** Concerns and Fears over Jack Stamps

Hi Doreen and Michael,

Since the topic was brought up, I'd like to discuss with you my concerns over Jack Stamps. I apologize for the length of this email.

I truly feel like **Jack has not only discriminated against me but has also defamed and victimized** me.

When preparing for 304 in the Summer of 2019, I met or had a call with EVERY instructor who teaches a foundations class in AET as an information gathering session. While it was against my better judgement, I also met with Jack at the recommendation of Bruce. My meeting with Jack contained the same questions and statements as the other meetings I held with Foundations instructors, except for some sympathetic words that I gave to him when he shared how down he was.

My meeting with Jack was in good faith, and a continuation of his offering of help "in any way I can" when I first joined AET.

Since that meeting Jack has made an enormous number of untrue statements about what we discussed, dramatically distorted parts of our conversation, used opinionated and old data to defame me, and tried to use my medical condition as a way of getting me removed from 304. He has also made attempts to besmirch my reputation and simply made flat out lies about me to my supervisors, colleagues, alumni, representatives from the Austin American-Statesman, (perhaps students), and anyone who was CCed in his email on 8/21/2020.

I was present in two of the faculty meetings where Jack acted out to derail the sessions. In one of these meetings **Jack stated to the faculty that he was "happy" I was taking over 304**, meanwhile he had emailed Doreen libelous and discriminatory statements in an attempt to push me out of my role in 304.

I now live in fear of Jack, for both my professional and personal safety. To his own admission he has looked up information online specifically about me to hurt my reputation, something I do not think he has done to other faculty members. In an attempt to protect myself I've now blocked him on all social media, including LinkedIn, the same tactics I would take with a stalker.

I fear he may try and contact former and current colleagues and try to further defame me for future opportunities and continue to attempt to damage my professional reputation.

When we were on campus, I was in fear of him showing up to my classes or contacting my students. Now I fear him showing up to my home, calling me, or trying similar tactics with my wife, who is also a UT employee.

Jack has proven himself to be an unstable individual who has targeted myself, as well as others. I don't know what he is capable of beyond what he has already done, but I do feel that his actions have put me and my family's safety and security at risk.

I've considered opening a discrimination case against Jack with the University, and take perhaps legal action against him for libel, and discrimination. The only reason I hesitate is that I fear that Jack will retaliate, either through these continued tactics, or physical altercations. Who knows what he is capable of at this point?

This is a time I should be preparing for my classes, working to make this the best experience for my students as possible, and recovering from the death of my Father. It is unfair and inappropriate that Jack has victimized me in attempts to hurt my reputation for his own personal gain.

Thank you for taking a moment to listen to my concerns.

Best,

David (D.S.) Cohen
Assistant Professor of Practice, UT Game Design Program
The University of Texas at Austin | Department of Arts and Entertainment Technologies | School of Design and Creative Technologies| College of Fine Arts | designcreativetech.utexas.edu

From:    "Shockley, Carmen L" <cshockley@austin.utexas.edu>

To:    "Harnden, Susan C" <susan.harnden@austin.utexas.edu>

Date:    8/27/2020 10:44:55 AM

Subject:    FW: Do You Demand Change?

Attachments:    0821_2020_JWS Open Letter to Faculty and Staff[2].pdf

FYI

**From:** "Dempster, Douglas J" <ddempster@austin.utexas.edu>
**Date:** Sunday, August 23, 2020 at 1:49 PM
**To:** "Lorenzo, Doreen" <doreen.lorenzo@austin.utexas.edu>, "Williams, Holly A" <hwdnce@austin.utexas.edu>
**Cc:** Janet Dukerich <janet.dukerich@austin.utexas.edu>, Carmen Shockley <cshockley@austin.utexas.edu>
**Subject:** Re: Do You Demand Change?

Doreen, I'm sorry Jack seems to have decided that you, among all the rogues that populate his conspiracy-addled mind, deserve special denunciation. I suspect he hopes that because you came to the hearing, you're his best hope for eliciting some sort of concessionary response. I would resist the impulse to respond at all.

At least he has not accused you of running a pedophile ring in the basement of a pizza parlor. Not yet, anyway.

That Jack has decided to devote his days and hours to his crusade doesn't mean the rest of us should. Ignore it. The only reputation Jack's screed seriously damages is his own. My advice is that you should advise your faculty similarly. I'd be happy to do that if it would help.

I've copied this to Janet Dukerich and Carmen Shockley. (Caveat emptor: It's long. Very long.) I don't think he has, but they'll advise if they think Jack has crossed some legal line.

Doug

**From:** "Lorenzo, Doreen" <doreen.lorenzo@austin.utexas.edu>
**Date:** Sunday, August 23, 2020 at 10:34 AM
**To:** Holly Williams <hwdnce@austin.utexas.edu>, "Dempster, Douglas J" <ddempster@austin.utexas.edu>
**Subject:** FW: Do You Demand Change?

Good morning, Jack is at it again.

**From:** "Stamps, Jack" <jstamps@austin.utexas.edu>
**Date:** Sunday, August 23, 2020 at 9:39 AM
**To:** "Lorenzo, Doreen" <doreen.lorenzo@austin.utexas.edu>, ▓▓▓▓▓▓▓▓▓▓
< >, "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
"|
**Cc:** "monica.penick@utexas.edu" <monica.penick@utexas.edu>, "Alarcon, Sofia" <sofia.alarcon@austin.utexas.edu>, | " >, "Baker, Michael" <michael.baker@austin.utexas.edu>, "Beaton, Alyson" <alyson.beaton@austin.utexas.edu>, "Browning, Cassidy C" <cassidy@austin.utexas.edu>, "Burke, Patricia J" <patti.burke@austin.utexas.edu>, "Canales, Kate" <kcanales@austin.utexas.edu>, "katecat@utexas.edu" <katecat@utexas.edu>, "Chang, Stacey H" <stacey.chang@austin.utexas.edu>, "Cohen, David S" <ds.cohen@austin.utexas.edu>, "Colucci, Jose" <Jose.Colucci@austin.utexas.edu>, Jai Dandekar|_____|"neal_daugherty@utexas.edu"

# TEXAS
## The University of Texas at Austin
### Police Department

INFORMATION CONTAINED WITHIN THIS REPORT MAY BE PROTECTED BY ATTORNEY-CLIENT PRIVILEGE

## THREAT MITIGATION COVER SHEET

### Incident Type: BRAC        Date Received:  11/4/2021

**Summary:** On 11/04/2021, UTPD was notified by BRAC of a concern involving a former non-tenured faculty member, identified as Jack Stamps.  Stamps is currently suing the University, but has recently fired his lawyers.

BRAC advised that several years ago, Stamps' contract was not renewed, and at that time he began acting erratic and scaring his coworkers.  Stamps was described as "very combative and confrontational".

Stamps has begun requesting information on multiple people involved with the School of Design and Creative Technologies.  The Assistant Dean of the School, Doreen Lorenzo, emailed BRAC with her concerns that many of the people being named in the open records requests were uninvolved and are concerned why their information is being requested.

BRAC advised that Stamps recently stated he was "getting fed up" with the lack of respect from UT Austin and that he would "go nuclear" if it persisted.  He has also requested President Hartzell speak with him directly, and believes that UT has ruined his life and his career.  Stamps was described as believing there is a conspiracy at UT designed to harm him.

Stamps will be notified soon that his open records requests are denied (due to being in litigation) and may also have his lawsuit dismissed.  BRAC has requested Doreen Lorenzo receive safety planning.

On 11/11/2021, Lorenzo was contacted by IMD and provided safety planning and safety tips for her and her staff.  Lorenzo advised that the staff was primarily concerned with Stamps showing up on campus when he no longer has any recourse for his separation from the University.  Lorenzo was advised to share with staff that if Stamps shows up in their building, staff should notify UTPD immediately.  Lorenzo also advised that Stamps had a history of mental health concerns when he worked at UT, including potential hospitalizations.

### Subject(s) [COPY & PASTE TO ADD ADDITIONAL SUBJECTS]

**Name:** Stamps, Jack Wilson Jr.          **DOB** 05/12/1969

**Alias:** MC Debris          **Descriptors:** W/M  5'11" 183lbs. GRAY/BLUE

**DL/ID:** TX 11046020                    **Initial D-Scale:** 2

**Cautions:** Click or tap here to enter text.      **Initial E-Scale:** 2

**Last Known Address:** 3906 Lago Vista Drive, Austin TX 78734

**These are the credentials of Plaintiff's father**

**Affiliation:** Non-Affiliated

**Campus Location(s):** N/A

**Vehicle(s):** TX LP **LHS8353  2013 Silver BMW I 135 (convertible 2 door)**

**Social Media Accounts:** https://www.facebook.com/jackwstamps    https://www.jackwstamps.com
https://twitter.com/postagethief

**Subject Notes:**

**Possible Phone number (210)849-5347**

**Name:** Lorenzo, Doreen                          **DOB**_____

**Alias:** Click or tap here to enter text.          **Descriptors:** W/F 5'11", 155lbs, Bro/Bro

**DL/ID:** |_____                              **Initial D-Scale:**  -

**Cautions:** Click or tap here to enter text.       **Initial E-Scale:**  -

**Last Known Address**: 1208 Verdant Way Austin, TX 78746

**Affiliation: Faculty**

**Campus Location(s):** N/A

**Vehicle(s):** Click or tap here to enter text.

**Social Media Accounts:** Click or tap here to enter text.

**Subject Notes:**

**Phone Number:  (512)659-4151**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. JACK WILSON STAMPS, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | SA-24-CV-294-HJB |
| | § | |
| UNIVERSITY OF TEXAS SYSTEM | § | |
| and UNIVERSITY OF TEXAS AT | § | |
| SAN ANTONIO, | § | |
| | § | |
| Defendants, | § | |



## ORDER

Before the Court is Defendants' 12(b)(6) Motion to Dismiss (Docket Entry 8) and *pro se* Plaintiff's Motion for Leave to File Second Amended Complaint (Docket Entry 21). For the reasons set out below, the motion to for leave to amend (Docket Entry 21) is **GRANTED**, and the motion to dismiss (Docket Entry 8) is **GRANTED IN PART** and **DENIED IN PART**.

### I. Jurisdiction.

Plaintiff asserts claims of retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a). The Court has original jurisdiction over such claims pursuant to 28 U.S.C. § 1331. The parties have consented to the undersigned's jurisdiction (*see* Docket Entry 25, at 1; Docket Entry 27, at 1), and the District Court has reassigned this case to the undersigned. (Docket Entry 30.) Accordingly, the Court issues this order pursuant to 28 U.S.C. § 636(c)(1).

### II. Plaintiff's Motion for Leave to Amend.

After Defendants moved to dismiss Plaintiff's first amended complaint, Plaintiff moved for leave to file a second amended complaint. Accordingly, before considering whether dismissal is appropriate, the Court must first determine which of Plaintiff's complaints is his live pleading.

The Court will therefore address Plaintiff's motion for leave to amend before turning to the issue of dismissal under Rule 12(b)(6).

As Plaintiff has already amended his complaint once, and as no scheduling order has yet been entered in this case, the standard governing leave to amend is provided by Federal Rule of Civil Procedure 15.   Under that Rule, "[t]he court should freely give leave" to amend "when justice so requires."   FED. R. CIV. P. 15(a)(2).   Rule 15 establishes a strong presumption in favor of granting leave, and the Court must do so unless there is a substantial reason to deny leave to amend.  *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).   The Court considers a variety of factors when deciding whether to grant leave to amend, "including undue delay, bad faith, . . . repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, . . . and futility of the amendment."   *Chandler v. United States*, 338 F. Supp. 3d 592, 600 (N.D. Tex. 2018) (quoting *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005)).

Plaintiff's proposed second amended complaint makes only very minimal changes to his allegations; thus, it would not moot Defendants' motion to dismiss.   *See, e.g.*, *O'Malley v. Brown Bros. Harriman & Co.*, No. SA-19-CV-0010-JKP, 2020 WL 1033658, at *2 (W.D. Tex. Mar. 3, 2020) (construing motion to dismiss "as being asserted against the most recent complaint" where it did not alter asserted basis for dismissal); CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, 6 FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed. 2002) ("If some of the [alleged] defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.").   Because it would not affect the motion to dismiss, and considering that no other deadlines have been set in the case, the Court finds that

permitting the amendment would neither prejudice Defendants nor delay the case. Nor is there any indication of bad faith on the part of Plaintiff. Defendants do not contest any of this; rather, they argue that Plaintiff's second amended complaint is futile because it could not survive their motion to dismiss. (*See* Docket Entry 22, at 1–2.) As this argument may properly be considered in conjunction with the motion to dismiss, it does not provide a substantial reasons to deny leave to amend. Accordingly, the Court will grant Plaintiff leave to amend his complaint, and consider that complaint in addressing Defendant's motion to dismiss

### III.       Defendants' Motion to Dismiss.

#### A.   *Legal Standard.*

The Court may dismiss a cause of action in a complaint when it fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Claims may be dismissed under Rule 12(b)(6) "on the basis of a dispositive issue of law," *Neitzke v. Williams*, 490 U.S. 319, 326 (1989), or a plaintiff's failure to allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When analyzing a motion to dismiss for failure to state a claim, the Court accepts "all well pleaded facts as true, viewing them in the light most favorable to the plaintiff." *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 344 (5th Cir. 2013). A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and rarely granted." *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In short, the factual allegations "must be enough to raise a right to

relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545.   This "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [pertinent] evidence."   *Id.*

Although facts alleged in the complaint are presumed to be true, the Court does not extend this presumption of veracity to "conclusory allegations, unwarranted factual inferences, or legal conclusions."   *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (citations omitted).   Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).   "But just as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation."   *Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024).   Finally, the Court should "liberally construe a *pro se* complaint and hold it to less stringent standards than formal pleadings drafted by lawyers."   *Mendoza-Tarango v. Flores*, 982 F.3d 395, 399 (5th Cir. 2020) (internal quotations and alterations omitted).

### B.  *Plaintiff's Allegations.*

Because Defendants seek dismissal at the pleadings stage, the Court simply adopts the well-pleaded facts from Plaintiff's live complaint. *See Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).   The allegations in the complaint concern Plaintiff's previous employment at University of Texas at Austin ("UT Austin"), and his employment and applications for three positions at Defendant University of Texas at San Antonio ("UTSA").

*1. Plaintiff's retaliatory termination from UT Austin.*

From 2015 through 2020, Plaintiff was a professor of music, arts, and entertainment technology at UT Austin.  (Docket Entry 21-2, at 2.)  In April of 2019, Plaintiff reported to UT Austin's Office for Inclusion and Equity ("OIE") that he observed sexual misconduct by administrators within UT Austin's College of Fine Arts ("COFA").  (*Id.* at 2–3.)  Less than two weeks after the accused administrators learned of his report, Plaintiff's teaching contract was terminated.  (*Id.* at 3.)

Plaintiff filed a complaint with UT Austin's Grievance Committee, a panel of which found that UT Austin had retaliated against Plaintiff for reporting the administrators' alleged misconduct.  (Docket Entry 21-2, at 3.)  Plaintiff subsequently filed a lawsuit against UT Austin in December 2020, alleging that it retaliated against him in violation of Title VII.  (*Id.*)  The parties settled the dispute out of court in June of 2023.  (*Id.*)

*2. Plaintiff's first unsuccessful UTSA application.*

Plaintiff moved to San Antonio in 2021.  (Docket Entry 21-2, at 3.)  In December of 2021, Plaintiff applied for a teaching position at UTSA in the Digital Humanities department (the "DH position").  (*Id.*)  Glenn Martinez, who was the dean of UTSA's College of Liberal and Fine Arts at that time, corresponded with Plaintiff about the DH position by email.  (*Id.*)  Martinez initially agreed to meet with Plaintiff about the DH position during the week of January 10, 2022.  (*Id.* at 3, 14.)  But on January 20, 2022, the Defendant University of Texas System ("UT System")—rather than UTSA—notified Plaintiff by email that he did not get the job.  (*Id.* at 3.)

*3. Plaintiff's part-time position teaching an online UTSA class.*

On July 12, 2022, Plaintiff interviewed for a part-time position in UTSA's School of Music ("SOM").  (Docket Entry 21-2, at 4, 32.)  Plaintiff was interviewed by Tracy Cowden, the UTSA

SOM Chair at that time. (*Id.*) During the interview, Plaintiff explained the circumstances of his departure from UT Austin and mentioned his 2020 lawsuit for retaliatory termination. (*Id.*) Plaintiff was ultimately hired part time to teach a single asynchronous,[1] online class. (*Id.* at 7–8.)

### 4. Plaintiff's second unsuccessful UTSA application.

On October 14, 2022, Plaintiff applied for a tenure-track position at UTSA, as Assistant Professor of Digital Music (the "DM position"). (Docket Entry 21-2, at 4, 32.) In January of 2023, Plaintiff learned that he did not advance past the first round of interviews for the DM position. (*Id.* at 5, 9, 32.)

On January 30, 2023, Plaintiff emailed Stacey Davis, the interim UTSA SOM Chair at the time, along with the members of the DM search committee to express, in so many words, concerns that his being passed over for the DM position was ongoing retaliation for his 2020 lawsuit against UT Austin. (Docket Entry 21-2, at 5.) On January 31, 2023, Davis responded that Plaintiff should seek recourse from UTSA's Equal Opportunity Services ("EOS") if he believed his non-hire was retaliatory. (*Id.*) Plaintiff promptly obliged, filing a complaint through UTSA's EOS for alleged retaliation over his previous lawsuit against UT Austin. (*Id.*)

Plaintiff later discovered that at least one member of the DM search committee, Laura Kelly, had expressed concerns over Plaintiff's embattled history at UT Austin. (Docket Entry 21-2, at 7–8.) In a text-message exchange with a colleague—whom Plaintiff alleges was then-SOM Chair Davis—Kelly described Plaintiff as "[c]razy" and "challenging," and made reference to his

---

[1] Asynchronous classes are unique among online classes in that they do not require simultaneous engagement or live interaction between the professor and students. Professors upload lectures and assignments in advance, which the students view and complete on their own time. *See Asynchronous*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003) ("[A]bsence or lack of concurrence in time.").

"lawsuit against UT at some point for wrongful termination." (*Id.* at 31.)  The other interlocutor—allegedly Davis—agreed with Kelly that Plaintiff's had "some drama in his life," but assured her that he had "only been hired to teach one . . . online[,] asynchronous" class. (*Id.*)

### 5. *Plaintiff's third unsuccessful UTSA application.*

In May of 2023, Plaintiff applied for a non-tenure track position at UTSA teaching Digital Audio (the "DA position"). (Docket Entry 21-2, at 8.)  On July 20, 2023, Plaintiff discovered that he had not been selected for the DA position—not even as a finalist on the shortlist for the position. (*Id.*)  Around the same time, UTSA expanded the DA position to absorb Plaintiff's online course, thereby eliminating his part-time employment at UTSA. (*Id.*)

### C.    *Discussion.*

To state a claim for retaliation under Title VII, a plaintiff must plausibly allege that "(1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action;[ ] and (3) a causal connection exists between the protected activity and the adverse action." *Cabral v. Brennan*, 853 F.3d 763, 766-67 (5th Cir. 2017) (citation omitted).  Plaintiff claims that Defendants retaliated against him for his 2020 lawsuit against UT Austin by refusing to hire him for the DH position in January of 2022, the DM position in January of 2023, and the DA position in July of 2023. (Docket Entry 21-2, at 8, 11.)  He further claims that Defendants' refusal to hire him was retaliation for his complaining to UTSA's EOS about his non-hire for the DM position in January of 2023. (*Id.* at 8.)

In their motion to dismiss, Defendants argue that Plaintiff has not plausibly pleaded any causal relationship between his protected activity—either his 2020 lawsuit against UT Austin or his January 2023 complaint to UTSA's EOS—and UTSA's decisions not to hire him for either the DH, DM, or DA positions. (Docket Entry 8, at 5–6.)  Defendants additionally argue that

Plaintiff's claims against UT System should be dismissed because it was not Plaintiff's employer, and therefore cannot be liable for a Title VII violation. (*Id.* at 7.) The Court addresses each of these arguments in turn.[2]

### 1. *Causation.*

"[I]n order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 434 (5th Cir. 2021). After all, "[i]f an employer is unaware of an employee's protected conduct at the time of the [materially] adverse . . . action, the employer plainly could not have retaliated against the employee based on that conduct." *Id.* (quoting *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999). Accordingly, to plausibly allege the causation element of a retaliation claim, a plaintiff's complaint must "allege facts permitting at least an inference of h[is] employer's knowledge of h[is] protected conduct in order to establish the required causal link between h[is] protected conduct and the alleged retaliation." *Wright*, 990 F.3d at 434.

Temporal proximity between a plaintiff's protected activity and the materially adverse action is one way that a causal connection may be shown. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007); *Garvin v. Sw. Corr., L.L.C.*, 391 F. Supp. 3d 640, 653 (N.D. Tex. 2019). But "the protected act and the [materially] adverse . . . action must be very close in time to establish causation by timing alone." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d

---

[2] Defendants also argue in their reply, that Plaintiff's retaliation claims against UT System—as to the DH and DM positions, specifically—are "barred" by a settlement agreement he signed with UT Austin and UT System in June of 2023. (Docket Entry 13, at 4.) However, "[a]rguments raised for the first time in a reply brief are generally waived." *Mission Toxicology, LLC v. Unitedhealthcare Ins. Co.*, 499 F. Supp. 3d 350, 359 (W.D. Tex. 2020) (quoting *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010)). The Court therefore declines to consider this issue in conjunction with Defendants' motion to dismiss.

571, 578 (5th Cir. 2020) (citation omitted).   The Fifth Circuit has "found temporal proximity on the scale of weeks to a few months sufficient to establish a causal link."   *Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *7 (5th Cir. Oct. 8, 2024) (collecting cases).

        i.   *The DH position.*

        As applied to the DH position, Defendants correctly argue that Plaintiff has not pleaded sufficient allegations to meet the causation prong of his retaliation claim.   As Defendants point out in their motion, Plaintiff has not alleged that UTSA was aware of the December 2020 lawsuit against UT Austin when it passed him over for the DH position in January of 2022.   (Docket Entry 8, at 5.)   And the two-year time frame is far too long for temporal proximity to provide an inferential causal link.   As for the 2023 protected activity Plaintiff has alleged, UTSA decided not to hire Plaintiff for the DH position a full year before he filed a complaint of retaliation with UTSA's EOS.   (*Id.*)   Because Plaintiff has failed to plausibly allege that UTSA retaliated against him by not hiring him for the DH position in January of 2022, that claim will be dismissed as to UTSA.

        ii.   *The DM position.*

        Plaintiff applied for the DM position on October 14, 2022.   (Docket Entry 21-2, at 4, 32.) He learned that UTSA did not hire him for the DM position on January 30, 2023.   (*Id.* at 5.) Plaintiff alleges that he told UTSA, through then-SOM Chair Tracy Cowden, about his lawsuit against UT Austin during his interview for the part-time position on July 12, 2022.   (Docket Entry 21-2, at 4.)   Plaintiff claims that his non-hire for the DM position was retaliation for his lawsuit against UT Austin.   (*Id.* at 8.)[3]

───────────────

        [3] Plaintiff also claims it was retaliation for his filing a complaint with the UTSA EOS Office on January 31, 2023. But this claim necessarily fails, as the hiring decision was made the day before the complaint was filed.

In his response to Defendants' motion, Plaintiff argues that retaliation can be inferred in this case based on "close timing" between his protected activity against UT Austin and UTSA's adverse actions against him.   (Docket Entry 12, at 13.)[4]   Here, the interval between when Plaintiff told UTSA about his prior protected activity and when UTSA declined to hire him for the DM position is about six and a half months—July 12, 2022, through January 30, 2023.   (*See* Docket Entry 21-2, at 5, 32.)   Six and a half months is too long to permit an inference of retaliation based on timing alone.   Such an inference may only be made when the interval between the protected activity and the adverse action is "very close."   *Brown*, 969 F.3d at 578.   And while "a time lapse of *up to four months* has been found sufficient" by the Fifth Circuit, it has also held that a "five-month gap alone [is] insufficient."   *Benfield v. Magee*, 945 F.3d 333, 337–38 (5th Cir. 2019) (collecting cases).   Thus, based on timing alone, the Court cannot infer that Plaintiff's non-hire for the DM position was caused by UTSA's discovery of his protected activity.   Therefore, to avoid dismissal, Plaintiff must "bridge this gap with a chronology of events that permits such an inference."   *Id.* at 338.

Considered with all inferences in Plaintiff's favor, the chronology of alleged events leading up to his non-hire for the DM position is enough, but jut barely, to support a plausible inference of causation.   On the one hand, at some indefinite point during the six-and-a-half-month interval

---

[4] As noted above, the protected activity against UT Austin occurred more than two years before the adverse action by UTSA. However, when a new employer allegedly retaliated against a prospective job applicant for protected activity taken against a prior employer, the relevant time interval for determining whether temporal proximity permits an inference of retaliation is the interval between when the new employer learned of the protected activity and when it took the adverse action. *See Miller v. Univ. of Houston - Downtown*, No. 4:15-CV-2927, 2023 WL 6465858, at *3 (S.D. Tex. Oct. 4, 2023) ("[D]iscussing . . . protected activity at a previous job for a different employer . . . with a prospective employer constitutes a protected activity as to the prospective employer.").

between UTSA's learning about Plaintiff's prior protected activity and its decision not to hire him for the DM position, it actually *did* hire him for a part-time position. (Docket Entry 21-2, at 7–8.)   However, he was hired only for one semester to teach a single, online, asynchronous class— a position for which Plaintiff was overqualified. (*See id.* at 20–30.)   And Plaintiff also points to an alleged text exchange between search committee member Laura Kelly and then-SOM Chair Davis. (*Id.* at 7–8.)   In that exchange, Kelly referred to Plaintiff's "lawsuit against UT . . . for wrongful termination," and described him as "[c]razy," and "challenging." (*Id.* at 31.)   Davis allegedly responded that "there's been some drama in his life," but apparently assuaged Kelly's concerns by stating that Plaintiff had "only been hired to teach one . . . online[,] asynchronous . . . audio tech class." (*Id.*)

This chronology of events permits a reasonable inference that UTSA chose not to hire Plaintiff, at least in part, because he is a "challenging" figure who sued his prior employer for wrongful termination—*i.e.*, retaliation for engaging in protected activity.   Moreover, the gap between UTSA's discovery of Plaintiff's protected activity and his non-hire for the DM position is only two and a half months shy of plausibly supporting an inference of retaliation based on timing alone. *See Benfield*, 945 F.3d at 337–38.   In light of all the above, and mindful of the Fifth Circuit's admonishment that 12(b)(6) motions are to be "viewed with disfavor and rarely granted," *Leal*, 731 F.3d at 410, the Court finds that Plaintiff has stated a plausible retaliation claim against UTSA as to the DM non-hire.   Accordingly, Defendants' motion will be denied as to that claim against UTSA.

iii.    *The DA position.*

Plaintiff applied for the DA position in May of 2023. (Docket Entry 21-2, at 8.)   He was informed that the he did not make the shortlist for the position on July 20, 2023. (*Id.*)   Plaintiff

alleges that his non-hire for the DA position was "retaliation for [his] lawsuit against UT Austin and for [his] filing a complaint with the UTSA EOS Office."   (*Id.*)

Once again, the timing is not on Plaintiff's side.   The adverse action—UTSA's decision not to hire Plaintiff for the DA position—occurred more than a year after UTSA learned about Plaintiff's lawsuit against UT Austin and more than five months after Plaintiff alleges that he filed his EOS complaint regarding the non-hire for the DM position.   These gulfs in time are well above the four-month ceiling sanctioned by the Fifth Circuit.   *See Benfield*, 945 F.3d at 337–38.   As such, Plaintiff's retaliation claim against UTSA as to the DA position can survive only if he has pleaded "a chronology of events from which retaliation may plausibly be inferred."   *Id.* at 338.

Unlike the DM position, the DA position was not even tenure-track, rendering Plaintiff a starkly overqualified applicant.   (Docket Entry 21-2, at 8.)   Moreover, around the same time that Plaintiff was passed over for the DA position, UTSA eliminated Plaintiff's part-time position by absorbing his teaching responsibilities into the DA position itself.   (*Id.*)   This just tends to prove that Plaintiff was, in fact, qualified for the DA position—as it would evidently consist, at least in part, of teaching material he had already been teaching at UTSA.   Additionally, causation is inferentially supported by the text-message exchange allegedly between Kelly and Davis, during which they discussed Plaintiff's lawsuit against UT Austin, his part-time teaching position, and their uncertainty as to "what will happen in future semesters."   (*Id.*)   As it turned out, what would happen was that UTSA would eliminate Plaintiff's part-time teaching position by absorbing it into the DA position for which he was applying, and then deny his application for that position.

Finally, the Court notes that Plaintiff filed a complaint with the Texas Workforce Commission ("TWC") and the Equal Employment Opportunity Commission ("EEOC") on July 14, 2023—six days before his application for the DA position was denied—alleging that his non-

hire for the DM position was retaliatory.  (Docket Entry 21-2, at 32.)  While Plaintiff did not actually point to his TWC-EEOC complaint as an impetus for the retaliation he alleges—pointing, instead, to his UTSA EOS complaint in January of 2023—his TWC-EEOC complaint nevertheless contributes to a chronology of events from which a reasonable inference of retaliation may be made.

Again, as Rule 12(b)(6) motions are "viewed with disfavor and rarely granted," *Leal*, 731 F.3d at 410, Plaintiff has alleged enough for the Court to reasonably infer that his non-hire by UTSA for the DA position was retaliatory.  Accordingly, Defendants' motion will be denied as to that claim.

### 2.   UT System.

Defendants also seek dismissal of Plaintiff's claims against UT System on the ground that UT System was not Plaintiff's employer—or, more precisely, his *prospective* employer.  (*See* Docket Entry 8, at 6–7; Docket Entry 13, at 2–3.)  This argument fails.

A defendant "who do[es] not . . . qualify as an employer cannot be held liable for a breach of [T]itle VII."  *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994).  Determining whether someone is an "employer" for purposes of Title VII "involves a two-step process."  *Muhammad v. Dallas Cnty. Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007) (citation omitted).  First, the Court must determine whether the defendant falls within Title VII's statutory definition of "employer"—*i.e.*, "a person engaged in an industry affecting interstate commerce who has fifteen or more employees . . . and any agent of such a person."  *Id.* (quoting 42 U.S.C. § 2000e(b)).  Second, if the defendant meets the statutory definition of "employer," then the Court must "analyze whether an employment relationship exists between the plaintiff and the defendant."  *Muhammad*, 479 F.3d at 380.

The Court has no difficulty finding that UT System fits the statutory definition of an "employer" under Title VII. For one thing, Defendants do not argue otherwise. But furthermore, Plaintiff alleges that UT System is one of the largest employers in Texas, employing over 122,000 faculty members. (Docket Entry 21-2, at 2; Docket Entry 12, at 16.) The real question, then, is whether UT System was *Plaintiff's* employer—specifically, his *prospective* employer.

To determine whether an employment relationship exists for purposes of Title VII, the Court employs what has eloquently been dubbed a "hybrid economic realities/common law control test." *Muhammad*, 479 F.3d at 380 (citation omitted). The "most important" part of this test is "[t]he right to control [the] employee's conduct." *Id.* (citation omitted). In assessing the level of control, the Court "focuse[s] on whether the alleged employer has the right to hire, fire, supervise, and set the work schedule of the employee." *Id.* (citation and internal quotation omitted). The less important "economic realities" component of the test focuses on "whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id.* (citation omitted).

Plaintiff does not allege that UT System paid his salary, withheld his taxes, provided his benefits, or set the terms of his part-time employment. Nor does he allege that UT System would have handled all the above in the event that he had been hired for the DH, DM, or DA positions. Thus, even accepting Plaintiff's allegations as true, the economic realities of his prospective employment are a mystery. However, this is the least important factor in determining whether UT System was Plaintiff's prospective employer. *See Muhammad*, 479 F.3d at 380. The "most important" factor in determining whether UT System was Plaintiff's prospective employer is whether it had "the right to hire" him. *Id.* Plaintiff alleges that "UT System, not UTSA," notified him of his non-hire for the DH position. (Docket Entry 21-2, at 4.) With respect to the DM and

14

DA position, Plaintiff does not specifically state whether it was UT System or UTSA who notified him of his non-hires.   But given that the DH, DM, and DA positions were all at UTSA—and that Plaintiff plausibly alleged that UT System had the right to hire or decline to hire him for the DH position—the Court can reasonably infer at this stage that UT System had the right to hire or decline to hire him for the DM and DA positions as well.   Accordingly, Defendants' motion will be denied as to Plaintiff's claims against UT System.[5]

**IV.      Conclusion**

Based on the foregoing, Plaintiff's Motion for Leave to File Second Amended Complaint (Docket Entry 21) is **GRANTED** and the U.S Clerk is directed to file Plaintiff's Second Amended Complaint and Jury Demand attached to his motion (Docket Entry 21-2).

Defendants' 12(b)(6) Motion to Dismiss (Docket Entry 8) is **GRANTED IN PART** and **DENIED IN PART**.   The motion is **GRANTED** as to Plaintiff's claim that UTSA retaliated against Plaintiff by not hiring him for the DH position.   In all other respects, Defendants' motion is **DENIED**.

It is so **ORDERED**.

**SIGNED** on November 13, 2024.

_____
Henry J. Bemporad
United States Magistrate Judge

---

[5] Although neither of the parties address whether Plaintiff's bringing claims against UT System *bars* him from bringing the same claims against UTSA, the Court briefly notes that "a party may not maintain a suit against both an employer and its agent under Title VII." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999); *Allen v. Benson*, 691 F. Supp. 3d 746, 759 (E.D. Tex. 2023). Because Defendants do not make this argument in their motion, the Court does not consider it any further at this time.